Karp Bros., Inc. *v.* West Ward Savings & Loan Association of Shamokin, Appellant.

584

Argued January 13, 1970. Before Bell, C. J., Jones, Cohen, Eagen, O'Brien, Roberts and Pomeroy, JJ.

reargument refused December 22, 1970.

*Andrew M. Pipa, Jr.,* for appellant.

*John L. Geiser,* with him *Litke, Gettig, Flood & Geiser,* for appellee.

Opinion by Mr. Justice Eagen, November 12, 1970:

This is a replevin action instituted by Karp Brothers, Inc. (Karp) against West Ward Savings & Loan Association of Shamokin (West Ward) for the return of fifty items of property or their value in damages. The case was tried nonjury below, after which a money award for the value of the goods was entered in favor of the plaintiff by the trial court. Exceptions to the adjudication were dismissed, and a final judgment entered. West Ward appeals.

The record discloses the following pertinent facts:

On April 29, 1964, J. N. McCown and Florence W. McCown, his wife, the owners of land in State College, Pennsylvania, upon which the Ranch Court Motel is

constructed, obtained a loan in the amount of $240,000 from West Ward. Payment of the loan was secured by a mortgage on the motel real estate executed by the McCowns in favor of West Ward as mortgagee. The mortgage was duly recorded. Subsequent thereto or on January 8, 1965, the McCowns entered into an agreement with Joseph S. Karp & Bros., now Karp Bros., Inc., a wholesale distributor of restaurant equipment, utensils and supplies. Under the terms of the agreement, Karp agreed to provide the McCowns with an assortment of fifty items of restaurant equipment to be used in furnishing a proposed restaurant which was to become part of the motel complex. These items are the subject of this replevin action.

On February 10, 1965, Karp filed a financing statement in the office of the Prothonotary of Centre County and the office of the Secretary of the Commonwealth. Attached to the financing statement filed in the prothonotary's office was a copy of the agreement of January 8, 1965.

On March 8, 1965, Karp, as lessor, and the McCowns, as lessees, executed a "Bailment Lease" covering the pieces of equipment mentioned previously. On the same day, this lease was negotiated to the Hollidaysburg Trust Company (Hollidaysburg) with all of Karp's interest and title in and to the restaurant equipment. The McCowns made ten payments totaling $5,107.97 towards the total time balance owing of $17,120.41. On January 11, 1966, a second "Bailment Lease" was entered into by the McCowns and Karp for a total time balance of $14,907.82, representing the balance still outstanding under the first "Bailment Lease", together with carrying charges. This lease was set over to Hollidaysburg in the same manner as the former.

On November 25, 1966, West Ward caused a writ of execution to issue on the bond accompanying its mort-

gage. A sheriff's sale followed on January 31, 1967, at which West Ward purchased the interest of the McCowns in the motel property. Prior to the sale, Karp notified the sheriff of the "Bailment Lease" and its interest in the restaurant equipment. Following the sale, when West Ward refused to permit Karp to remove the restaurant equipment, this action was instituted. Hollidaysburg was granted permission by the court to intervene as a party plaintiff.

West Ward's primary contention is that Karp failed to establish any replevin rights. With this we do not agree.

We first note that Karp assigned its "Bailment Lease" to Hollidaysburg, together with all its right, title, and interest in and to the subject goods. However, before trial, Hollidaysburg assigned back to Karp any rights it may thereby have received. Thus, for the purposes of this case, it is as if no assignment ever took place.

The most important remedy available to a secured party is the right to take possession of the collateral following a debtor's default. Uniform Commercial Code, Act of April 6, 1953, P. L. 3, as amended by the Act of October 2, 1959, P. L. 1023, 12A P.S. §9-503(1) (Supp. 1970) [hereafter U.C.C. §9-503]. In order to clarify any doubt as to what judicial process is available to a secured party in the event he is unable to obtain possession without breaching the peace, the Pennsylvania legislature added a proviso augmenting the official text of the Code which specifically provided that a secured party "may proceed by writ of replevin or otherwise." U.C.C. §9-503(2).

Thus, Karp, having established the default, thereby established its right to immediate possession of any collateral covered by its secured agreement with the debtor.

The only interest, which West Ward had, is a real property interest. Therefore, if the property in question remained personal property and never became a part of the realty, West Ward would have gained no interest therein as purchaser at the sheriff's sale. The lower court did not see fit to make any finding as to whether the goods ever became part of the realty, but for the reasons that follow, we deem such a determination is unnecessary to a disposition of the case.

Even if we assume that the goods did, in fact, become affixed to the realty,[1] nevertheless, Karp does have a priority interest in the goods under the Act of April 6, 1953, as amended by the Act of October 2, 1959, §9-313.

Under U.C.C. §9-313(2): "A security interest which attaches to goods before they become fixtures takes priority as to the goods over the claims of all persons who have an interest in the real estate except as stated in subsection (4)." The only category listed in subsection (4) in which West Ward could hope to be included is that of a "subsequent purchaser for value of any interest in the real estate", U.C.C. §9-313(4). However, subsection (4) makes clear that "an encumbrancer purchasing at his own foreclosure sale" [such as West Ward herein] is not deemed to be a "subsequent purchaser" within the meaning of Section 9-313. U.C.C. §9-313(4).

Thus, if Karp had a "security interest" and that interest "attached" before the goods became fixtures, its interest takes priority.

A "security interest" is defined as "an interest in personal property or fixtures which secures payment or performance of an obligation . . . . Whether a lease is

---

[1] We make no decision as to the status of the "Assembled Industrial Plant Doctrine" as far as the present appeal is concerned, either as to its applicability to the facts or in light of the enactment of the Commercial Code.

intended as security is to be determined by the facts of each case; however, . . . (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security." U.C.C. §1-201(37). The "Bailment Lease" in the instant case does so provide. Thus the execution of the "Bailment Lease" did create a "security interest" in Karp.

The question of when a "security interest" "attaches" is dealt with in U.C.C. §9-204(1), which provides: "A security interest cannot attach until there is agreement (subsection (3) of Section 1-201) that it attach and value is given and the debtor has rights in the collateral. It attaches as soon as all of the events in the preceding sentence have taken place unless explicit agreement postpones the time of attaching." When the first "Bailment Lease" was executed on March 8, 1965, there was a manifest agreement that the security interest attach, and value given, in that credit was thereby extended to the "bailment lessees." U.C.C. §1-201(44)(a). Moreover, the lessee-debtors had rights in the collateral in that the lease gave them a right to possession of the goods. All this occurred before the goods could possibly have become affixed to the realty, since there was testimony found to be true by the court below that none of the goods referred to in the lease were delivered prior to the execution of the first bailment contract.[2]

---

[2] While the witness who so testified, did "hedge" somewhat on cross-examination when asked if he was certain that none of the goods were delivered prior to March 8th, nevertheless, he stated several times on direct examination that there would have been no deliveries prior to that date. This was a question of credibility for the lower court to resolve and it did so in favor of his testimony given on direct examination.

Thus, if the goods became fixtures, this occurred at a time after Karp's "security interest" "attached" under the first "Bailment Lease", and Karp's interest, based on the first security agreement, was superior to that of West Ward, the prior real estate encumbrancer.

As previously noted, the parties executed a second "Bailment Lease" dated January 6, 1966. West Ward contends that this new lease in effect paid off the original indebtedness and completely extinguished the first "Bailment Lease," and, as a consequence, any secured interest arising therefrom. In other words, it is maintained that Karp's present security interest, if such exists, must be viewed as "attaching" as of the date the second "Bailment Lease" was executed, and since this was subsequent in time to the date the goods became fixtures, Karp's interest is subordinate to that of West Ward's. A post-affixation security interest is invalid against prior real estate claims unless such real estate interest holder consents in writing to the security interest, or disclaims in writing any interest in the goods. U.C.C. §9-313(3).

It would appear that the Code itself and prior court decisions are not helpful in resolving this issue of the significance of the second lease. However, we conclude that under the present record West Ward's position cannot prevail.

It is clear from the record that the second "Bailment Lease" was merely a refinancing of the indebtedness covered by the first "Bailment Lease", and it was the intent of the parties that the original indebtedness was to continue. This being so, we are of the view that Karp's security interest under the first "Bailment Lease" and his priority rights flowing therefrom continued and were not affected by the execution of the second "Bailment Lease."

Judgment affirmed.