450 A.2d 75

**John BONCZEK and Mary Bonczek doing business as a partnership Silver Creek Farm**

v.

**PASCOE EQUIPMENT COMPANY, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 13, 1980.

Filed Sept. 3, 1982.

12

Samuel W. Braver, Pittsburgh, for appellant.

Robert B. Truel, Pittsburgh, for appellees.

Before HESTER, BROSKY and VAN der VOORT, JJ.

HESTER, Judge:

This appeal from the Allegheny County Court of Common Pleas, Civil Division, involves a tractor leased by appellees Mary and John Bonczek, owners of the Silver Creek Farm, from the Pascoe Equipment Company, appellant.

The principal business of appellees was the production of hay for sale to area farms and stables. Having enjoyed some degree of success in the early days of their venture, the appellees decided to expand their capacity to grow, harvest and sell hay. To accomplish this expansion, the appellees leased a tractor from the appellant who was in the business of selling and leasing farm machinery. The tractor

was leased in the name of appellee Mary Bonczek rather than in the name of her brother John due to the fact that John had exhausted his line of credit. The appellees were partners in the Silver Creek Farm and maintained a partnership checking account. However, the expenses for the tractor were paid from the personal account of appellee Mary Bonczek.

The terms of the tractor lease called for appellees to make one year's pre-payment of $2,800 to be followed by 3 additional annual payments of $2,800. Additionally, appellees were responsible for insurance payments for the tractor. At the end of four years, appellees had the option of purchasing the tractor for $2,800.

At the end of the first year, appellees were unable to pay the second year's rental on its due date. When appellant asked appellee John Bonczek for the payment, Bonczek explained that inclement weather had delayed the second hay cutting and he did not have the money at the moment but expected to have the total amount due before the end of haying season. Appellant's (Mr. Pace) allegedly responded, "get me what you can" (R. at 151a). Thirty days later, appellee tendered $1,000 to appellant's vice-president and general manager, Mr. Pace, and also paid the insurance premium which was due on the policy covering the tractor. Thirteen days later, appellees paid appellant an additional $700 on the balance owed on the lease. This second check, like the first, was cashed by the appellant. Thirty-four days later, on August 28, 1977, at the height of the haying season, appellant, without notifying appellee of its intentions, repossessed the tractor from the appellees' farm. Immediately, appellee John Bonczek called appellant's vice-president Mr. Pace, who allegedly said if Bonczek paid him the balance owed that day, he could regain possession of the tractor. However, when Bonczek delivered the balance (which he had borrowed from friends) to Pace, Pace refused to accept it and Bonczek did not regain possession of the tractor.

Appellees then instituted this equity action alleging the lease agreement had been modified by a subsequent oral

understanding between the parties and that they sustained severe losses as the result of appellant's breach of said oral modification.

The matter was tried before Judge Narick and a jury. The jury returned a verdict in favor of the appellees in the amount of $10,000 plus interest. Following the argument and denial of motions for a new trial and judgment n.o.v., appellant filed the within appeal.

The legal issue we are presented with in the case is whether there was a waiver of the original lease agreement between the parties caused by an oral modification of the original written instrument. "The Court interpreting a . . . contract can always consider the surrounding circumstances in order to ascertain the intention and the meaning of the parties," *In Re Herr's Estate*, 400 Pa. 90, 161 A.2d 32, 34 (1960). We must examine the circumstances surrounding the original lease agreement and the behavior of the parties pursuant to the lease.

In Pennsylvania, the law is "well settled that a written agreement may be modified by a subsequent (written or) oral agreement and that this modification may be shown by writings or by words or by conduct or by all three," *Dora v. Dora*, 392 Pa. 433, 437, 141 A.2d 587, 590 (1958); *Elliott-Lewis Corp. v. York-Shipley, Inc.*, 372 Pa. 346, 94 A.2d 47 (1953). The case of *Universal Builders, Inc. v. Moon Motor Lodge, Inc.*, 430 Pa. 550, 244 A.2d 10 (1968) held that a written contract could be orally modified even though the written contract provides that modifications must be in writing. *Universal* cites the other case of *Wagner v. Graziano Construction Co.*, 390 Pa. 445, 136 A.2d 82 (1957) and agrees with the holding of *Wagner* that:

> There is nothing sacrosanct about a written agreement granted that writing makes for specificity and clarity, reduces the chance for errors, and allows for constant reference as to what was agreed upon, it nevertheless holds no superior position over an oral compact in the realm of authoritative utterances, except where the Statute of Frauds intervenes or is invoked. The most ironclad written contract can always be cut into by the acetylene

torch of parol modification supported by adequate proof. *Wagner, supra,* 390 Pa. 448, 136 A.2d at 83.

The Bonczeks had a written agreement, a lease with Pascoe Equipment Company, dated June 11, 1976. The terms of the lease agreement calling for yearly payments were met in the first year by a payment of $2,800. The issue is whether the original agreement was orally modified by John Bonczek and Samuel Pace (acting on behalf of Pascoe Equipment Company) when Bonczek could not fulfill or meet the requirements of the lease in the second year of its life.

■ Two specific criteria must be met in order for an oral modification to be valid: "the law is well settled that a written agreement can be modified by a subsequent oral agreement provided the latter is based upon a valid consideration and is proved by evidence which is clear, precise, and convincing." *Pellegrene v. Luther,* 403 Pa. 212, 169 A.2d 298 (1961); *National Bank of Fayette County v. Valentich,* 343 Pa. 132, 22 A.2d 724, 726 (1941); *Stoner v. Sley System Garages,* 353 Pa. 532, 46 A.2d 172 (1946).

■ With regard to the first requirement, the appellants contend that no new consideration supported the oral modification and therefore, appellees breached the original agreement and that appellants acted within the parameters of the lease when they repossessed the tractor. We disagree. When Pascoe's agent, Mr. Pace, was informed by appellee John Bonczek that he did not have the money to make the second year's payment. Pace allegedly replied, "get me what you can." When Bonczek tendered $1,000 to Pascoe (and there was a factual dispute in the testimony at trial over whether the check for $1,000 was given to the bookkeeper or to Mr. Pace), the check was accepted and deposited. When Bonczek made a second installment payment of $700, the sum was also deposited into the account of Pascoe. Bonczek knew that the lease called for only *one* payment of a total sum of $2,800. Also Bonczek knew that he would have to pay rent for the tractor or risk losing it. But rather than admit defeat and acquiesce to the repossession of the tractor, Bonczek in good faith asked Pace if payments could be made on account. Pascoe, in turn, could have immediate-

ly exercised its right of possession, but chose to accept the partial payments thereby avoiding repossession. The acceptance by Pace of a sum less than that specified in the lease modified the original lease, and such modification was supported by $1,000 consideration. Appellants claim Bonczek only did what he was legally obligated to do under the terms of the original lease and that the alleged modification lacked new consideration. What he was legally obligated to pay was $2,800. The acceptance of a lesser sum and the promise of future payments caused the original lease to be validly modified and caused Mr. Bonczek to act as he was bound to under the modification, that is, to pay what he could when he could.

The evidence of a new consideration is clear, convincing, and precise, when one considers that each of the payment checks were accepted by the appellants and placed under their control. Not only was there an oral modification of the lease, but there was a partial performance of the lease, as modified. Appellants argue that the lease said that time was of the essence in the operation of the agreement. However, the Court in *Warner v. MacMullen,* 381 Pa. 22, 112 A.2d 74 (1955), held that:

> . . . even though the time fixed in an agreement for settlement is stated to be of the essence of the agreement, it may be extended by oral agreement or be waived by the conduct of the parties, and where the parties treat the agreement as in force after the expiration of time specified for settlement, it becomes indefinite as to time and neither can terminate it without reasonable notice to the other. *Warner v. MacMullen,* supra, 381 Pa. at 29, 112 A.2d at 78; see also *DiGiuseppe v. DiGiuseppe,* 373 Pa. 556, 96 A.2d 874 (1953).

In that regard, appellant contends the trial court committed "basic, fundamental and prejudicial error" in determining that the equipment lease agreement created a security interest governed by Division Nine of the Uniform Commercial Code, Act of November 1, 1979, P.L. 255, No. 86, 13 Pa.C.S.A. § 9101 et seq. *Gimore v. Marsh,* 424 Pa. 361, 227 A.2d 881, 882 (1967).

Pursuant to that determination, the court charged on Division Nine Rights of Repossession and Notice of Resale.

A "security interest" is defined in Section 1201 of the Uniform Commercial Code, 13 Pa.C.S.A. § 1201, as follows:

A security interest means an interest in personal property or fixtures which secures payment or performance of an obligation. The retention or reservation of title by a seller of goods notwithstanding shipment or delivery to the buyer (Section 2401) is limited in effect to a reservation of a "security interest". The term also includes any interest of a buyer of accounts or chattel paper which is subject to Division 9. The special property interest of a buyer of goods on identification of such goods to a contract for sale under Section 2401 is not a "security interest", but a buyer may also acquire a "security interest" by complying with Division 9. Unless a lease or consignment is intended as security, reservation of title thereunder is not a "security interest" but a consignment is in any event subject to the provisions on consignment sales (Section 2326). Whether a lease is intended as security is to be determined by the facts of each case; however, (1) the inclusion of an option to purchase does not of itself make the least one intended for security, and (2) an agreement that upon compliance with the terms of the lease the leasee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security.

The lease specifically provided:

"Title: Title to the equipment shall at all times be vested in the lessor unless transferred to the lessee through sale . . ."

██ However, 13 Pa.C.S.A. Section 9202 makes it clear that Title to the collateral is immaterial with respect to whether a security interest exists. See also 13 Pa.C.S.A. Section 2401; 13 Pa.C.S.A. 9102 and the official comment thereto; the official comment to 13 Pa.C.S.A. Section 1201;

*Girard Trust Corn Exchange Bank v. Warren Lepley Ford, Inc.,* 13 Pa.D & C 2d 119 (1959).

The above-stated definition of a "security interest", and 13 Pa.C.S.A. Section 9102 make it clear that the determination of whether a security interest exists initially depends upon the intent of the parties to the transaction. The record in the instant case does not specifically address the issue of intent. With the exception of the terms of the Equipment Lease Agreement itself, the only other evidence in the record concerning this issue would be the testimony of Mr. Bonczek, who testified that he understood that he was buying the equipment. He stated, "Yes, after four years of renting it, we received it."

In ruling that the equipment lease agreement in the instant case did create a security interest, subject to the rights, obligations and remedies specified by Division 9 of the Code, the lower court relied on *Karp Brothers, Inc. v. West Ward Savings and Loan,* 440 Pa. 583, 271 A.2d 493 (1970). In that case, the Supreme Court held that a bailment lease which provided that the lessees had the option to become the owners of the property at the end of the lease for no additional consideration, created a security interest, as defined by 13 Pa.C.S.A. Section 1201. The appellant in the instant case argues that *Karp,* supra, is distinguishable from the instant case due to the fact that the equipment lease agreement provided for a "total purchase option after lease payments" in the amount of $2,800.

The question thus becomes whether the payment of what amounts to one-year's additional rent, at the time of exercise of the option, constitutes "nominal consideration" within the meaning of 13 Pa.C.S.A. Section 1201.

Finding no other authority in Pennsylvania concerning this issue, we have reviewed decisions of other states which have adopted the Uniform Commercial Code. We adopt the following compelling reasoning of the Supreme Court of Alabama, in *Commerce Union Bank v. John Deere Industrial Equipment Company,* 387 So.2d 787, 790 (Ala. 1980):

"Although intent is the principal test under the Code, other factors for consideration have been used by the courts. *In re Alpha Creamery Co., Inc.,* 4 U.C.C.Rep.Serv. 794, 797–98 (W.D.Mich.1967), listed the following indicia for distinguishing a true lease from a security interest.

1. The facts in each case control to show intention of the parties to create a security interest.

2. Reservation of title in a lease or option to purchase appurtenant to or included in the lease does not in and of itself make the lease a security agreement.

3. Lease agreement which permits the lessee to become the owner at the end of the term of the lease for a nominal or for no additional consideration is deemed intended as a security agreement as a matter of law.

4. The percentage that option purchase price bears to the list price, especially if it is less than 25%, is to be considered as showing the intent of the parties to make a lease as security.

5. Where the terms of the lease and option to purchase are such that the only sensible course for the lessee at the end of the lease term is to exercise the option and become the owner of the goods, the lease was intended to create a security interest.

6. The character of a transaction as a true lease is indicated by:

(a) Provision specifying purchase option price which is approximately the market value at the time of the exercise of the option.

(b) Rental charges indicating an intention to compensate lessor for loss of value over the term of the lease due to aging, wear and obsolescence.

(c) Rentals which are not excessive and option purchase price which is not too low.

(d) Facts showing that the lessee is acquiring no equity in leased article during the term of the lease.

■ On the basis of the criteria listed above, we hold that the Equipment Lease Agreement in this instant case created

a "security interest" subject to the rights, obligations and remedies provided by Division 9 of the Code. The Equipment Lease Agreement specified that the tractor, at the time the agreement was executed on June 11, 1976, was worth $12,200. Therefore, the option price of $2,800 would be less than 25% of the stated value of the tractor. Furthermore, the agreement itself makes it clear that the annual rental payments are credited to the ultimate option price, since the agreement states "total purchase option after lease payments $2,800.00". However, we are most persuaded by criterion No. 5, quoted above, due to the fact that, in the instant case, ". . . the only sensible course for the lessee at the end of the lease term is to exercise the option and become the owner of the goods, . . ." It is clear that the Bonczeks could, at the end of 4 years, either pay one year's additional rent and become the owners of the tractor, or return the tractor to Pascoe. It would appear that the only sensible course would be to take advantage of their equity, which the credited rental payments had created, by exercising the purchase option. See also *Arnold Machinery Company v. Balls,* 624 P.2d 678, 680 (Utah, 1981); *FMA Financial Corporation v. Pro-Printers,* 590 P.2d 803 (Utah, 1979); *Eimco Corporation v. Sims,* 100 Idaho 390, 598 P.2d 538, 542 (1979); *Consolidated Equipment Sales, Inc. v. First State Bank and Trust Company,* 627 P.2d 432, 435 (Okl.1981).

Judgment affirmed.