**In the Matter of Phillip Lester BERGE and Betty Jo Berge, d/b/a Adams Farm, Blue Top Farm, Newell Farm, Swiontek Farm and Ponderosa Farm, Debtors.**

**Bankruptcy No. MM11–82–00953.**

United States Bankruptcy Court, W.D. Wisconsin.

Aug. 23, 1983.

Michael P. Erhard, Madison, Wis., for creditor Baldwin-United Leasing Co.

John D. Center, Jay D. Koritzinsky, Madison, Wis., for debtors.

MEMORANDUM DECISION DENYING SUMMARY JUDGMENT

ROBERT D. MARTIN, Bankruptcy Judge.

About a year prior to their filing a chapter 11 petition, the debtors in this case entered into three separate equipment leases with Baldwin-United Leasing Company. Under these leases the lessees have the option of purchasing the subject equipment (irrigation machinery and grain bins with dryers) for its "fair market value" as of the date of expiration of each lease. The lessees have the obligation of maintaining, repairing and insuring the equipment, and

also must return all the equipment in good condition at their own expense at the conclusion of the term of the lease.

■ The parties differ as to whether these agreements are "true leases," subject to assumption or rejection under § 365 of the Bankruptcy Code, or are in essence a security device. Baldwin-United has moved for an order directing the debtors to assume or reject the leases. The debtors argue that the purported leases are no more than a financing device. For the reasons stated below, this court finds that material questions of fact exist, and thus a motion which in essence seeks summary judgment on this question must be denied.

Although this court has rigorously and consistently applied the test articulated in *United General Leasing, Inc. v. Gehrke Enterprises, Inc.,* 1 B.R. 647 (Bkrtcy.W.D.Wis. 1979) and elaborated upon in *Livesey Enterprises v. Smith Management, Inc.,* 8 B.R. 346 (Bkrtcy.W.D.Wis.1980) when considering whether lease agreements have the legal attributes of leases or of finance sales contracts,[1] the Baldwin-United agreement presents a situation which requires reexamination of the principles behind the test. The test as expressed by this court was originally suggested by Professor Peter Coogan whose formulation stated parenthetically that the granting of any option to purchase was tantamount to the full transfer of ownership.[2] That parenthetical statement was, however, limited in the discussion of the test by Coogan's recognition that only an option to purchase which was, at the time of contracting, anticipated to be disproportionately low in relation to the value of the property at the time it was to

be exercised, would, in fact, result in a transfer of ownership by virtue of the lease agreement. Subsequent formulations of the test, including that by this court, abandoned Coogan's original parenthesis, thereby giving the appearance that Coogan's initial limitations had also been abandoned. Such is the danger of attempting to articulate a precise but simply stated test by which relatively easy measurement can be achieved.

■ The question this case presents is whether the presence of an option regardless of its terms has the same effect as the transfer of ownership either by sale and distribution of proceeds (as was the case in *Gehrke*) or by exercise of a nominal purchase price option as suggested in the clear statement of Wis.Stat. § 401.201(37). That such a transfer of ownership results from the exercise of an option which is so economically advantageous as to make the failure to exercise it financially irresponsible has been suggested in Coogan's original formulation and in DeKoven's and Mooney's commentaries thereon.[3] As Baldwin-United has pointed out in its briefs, the Seventh Circuit Court of Appeals in *In Re Marhoefer Packing Co., Inc.,* 674 F.2d 1139 (7th Cir.1982) has suggested that the economic reality is of paramount importance. That is not inconsistent with the original statement of the progenitor of the *Gehrke* test, Professor Coogan. However, I am satisfied that the *Gehrke* test, although stating the appropriate bases for the decision of both that case and *Smith Management,* misleads by the simplicity of its statement in the present case. The suggestion that the pres-

1. The test requires the following requirements to be met if a financing device is to be found: (1) there must be an agreement to pay the lessor a set amount; (2) which must be equivalent to the value of the leased goods; (3) and the lessee must become the owner, or have the option to become the owner, of the leased goods.

2. Coogan, Leases of Equipment and Some Other Unconventional Security Devices: An Analysis of U.C.C. Section 1–201(37) and Article 9, Secured Transactions, 1 Bender's Uniform Commercial Code Service § 4A.07[1].

3. Ronald M. DeKoven, Proceedings After Default by the Lessee Under a True Lease of Equipment, Chapter 29B, Secured Transactions, 1C Bender's Uniform Commercial Code Service, and *id.,* Leases of Equipment: *Puritan Leasing Company v. August,* a Dangerous Decision, 12 Univ. of San Francisco L.Rev. 257 (1978). Charles W. Mooney, Jr., Personal Property Leasing: A Challenge, 36 Business Lawyer 1605 (1981).

ence of any option is sufficient to satisfy the third prong of the test, carries with it the possibility for doing substantial mischief, particularly as it is sought to be applied by the debtor in this case. In fact, the true character of the option and its effect must be carefully considered. If the option is for a nominal price it will be a clear index of an intention to transfer ownership by virtue of the lease agreement. If the exercise of the option is for a price which is not on its face nominal, the option must be scrutinized to determine whether the economic circumstances contemplated at the time the contract was signed were such that the exercise of the option was understood or calculated to be virtually certain as a matter of rational business judgment and, therefore, a significant part of the contract rights bargained for.[4]

In the present case, although the option is available only upon the payment of the appraised fair market value at the termination of the lease term, if that term extends beyond the anticipated useful life of the equipment it would be clear that all incidents of ownership contemplated at the time the lease agreement was entered into would have been conveyed under the terms of the original agreement since there would be virtually no residual value in the property.[5] An appraisal for fair market value, especially if minimal, would not change the fact that all the anticipated incidents of ownership would have been conveyed to the lessee under the lease agreement. In addition, if the fair market value of the property contemplated at the end of the lease term was less than the cost of reassembly and transport of the equipment to the lessor as required by the terms of the lease agreement, it could be demonstrated that parties contemplated that the exercise of the option would be an economic benefit to the lessee of such magnitude that it was a portion of the price bargained for at the time the lease agreement was entered into, in exchange for which all incidents of ownership would be conveyed. In such a case the exercise of the option would be virtually

---

4. A series of cases in other jurisdictions has pointed up aspects of this meaning of "nominal" purchase price. *See, e.g. Centurian Corp. v. Cripps,* 624 P.2d 706, 34 U.C.C.Rep. 525 (Utah 1981), where the Utah Supreme Court approved the suggestion that "a lease agreement is actually a purchase and sale agreement ... if the 'lessee' is constrained to become the owner of the property at the termination of the lease, either by contractual agreement or as a matter of economic compulsion." 34 U.C.C. Rep. at 530 *(footnotes omitted). Cf. Bonczek v. Pascoe Equipment Co.,* 304 Pa.Super. 11, 450 A.2d 75, 34 U.C.C.Rep. 1362, 1366 (Pa.Super. 1982) [citing with approval *In Re Alpha Creamery Co., Inc.,* 4 U.C.C.Rep. 794, 798 (W.D.Mich. 1967) ("where the terms of the lease and option to purchase are such that the only sensible course for the lessee at the end of the lease term is to exercise the option and become the owner of the goods, the lease was intended to create a security interest") ]. *Cf. In Re AAA Machine Co., Inc.,* 30 B.R. 323, 36 U.C.C.Rep. 287 (Bkrtcy.S.D.Fla.1983).

5. While an option for the lessee to purchase property for its fair market value at the end of the lease generally creates an inference that the consideration is other than nominal, "[t]his inference may be rebutted, however, by proof that the fair market value at the conclusion of the lease term would be negligible. As one commentator explained:

'If the structure of the lease, comprising its minimum term multiplied by the periodic rental for that term, will enable the lessor to recover the present cash market value in full plus interest at an appropriate rate, the lessor may not need or intend ever to recover possession of the leased equipment once all rentals have been paid in full. However, absent a purchase option at a nominal figure, an intention to abandon its proprietary interest in leased equipment can not easily be imputed to the lessor. On the other hand, if there is added to the above facts a finding that the minimum term closely approximates the anticipated economic life of the equipment, the intention becomes fairly obvious.' Peden, The Treatment of Equipment Leases as Security Agreements under the Uniform Commercial Code, 13 Wm & Mary L Rev 110, 147–148 (1971) quoted in *Leasing Service Corp. v. American National Bank & Trust Co.,* 19 U.C.C. Rep. 252, 259–260 (D.N.J.1976)." *In Re Coors of the Cumberland, Inc.,* 19 B.R. 313, 34 U.C.C.Rep. 241, 248–49 (Bkrtcy.M.D. Tenn.1982). Further, "nominality" may be other than facial, particularly where the costs of allowing the lease to expire fall so much on one side as virtually to compel their avoidance by exercise of a purchase option. Thus a cost may be nominal conceived in relation to one side's alternatives, but not facially nominal considered only in terms of the other.

"compelled" or the "only sensible course," and the consideration *ipso facto* nominal. If the facts show that these projections were or could have been made by the parties at the time the lease was entered into, it could be demonstrated that although the option price was not nominal *per se* it was sufficiently beneficial to the lessee (even though stated as being fair market value) to satisfy the third prong of the test previously articulated by this court.

There is no evidence nor allegation presented to this court as yet in this case which would make the determinations as to the character and economic reality of the option possible. The factual determinations as to the anticipated life of the equipment, the anticipated fair market value of the equipment at the end of the lease term and the anticipated expense of the alternative to exercise of the option are possible factual considerations in this case. Because those questions of fact exist, a motion for summary judgment must be denied.