## Capelli v. Pittsburgh National Bank

*Sanford S. Finder,* for plaintiff.
*Jeffrey J. Leach,* for defendant.

RODGERS, *J.,* May 2, 1984—This matter is before the court en banc on exceptions taken by plaintiffs, Raymond M. Cappelli et al. (hereinafter Cappelli), to the December 30, 1983 order of Judge Charles G. Sweet which granted Summary Judgment in favor of defendant, Pittsburgh National Bank (hereinafter PNB).

The uncontested facts are as follows:

On October 20, 1978, Cappelli executed a note to PNB in the amount of $150,000. This note stated in three places on its face that it was payable "on demand." The demand note provided for an interest rate of 11 percent until the date of maturity and 12 percent if and when the note matures.

Until 1980, payments were made at the 11 percent rate. Subsequently, Cappelli began receiving monthly billing statements containing an interest rate higher than 11 percent. Cappelli discussed the situation with a representative of PNB, Mr. Scott Russell. When Cappelli asked Russell why the rate had gone up, he was told, "That is the way it has got to be," and "If you don't like it you could pay it off."

Cappelli was unwilling or unable to pay off the note. Therefore, for approximately two years, he continued making monthly payments at the higher interest rate. After May 17, 1982, the date the note was paid in full, Cappelli filed the instant suit demanding the return of all interest paid in excess of 11 percent.

A motion for summary judgment was made by PNB. The motion was based upon the pleadings and the deposition testimony of Raymont Cappelli. After

argument and briefs, Judge Sweet granted PNB's motion.

Plaintiff, Raymond Cappelli, is, to say the least, a sophisticated businessman. He is a 1952 graduate of the University of Pittsburgh with a degree in Business Administration. His business contacts with PNB stretch back to the early 1950's. These contacts include many various types of loans and notes. He is no stranger to the world of high finance. His entrepreneural endeavors include ownership of Washington Distributing Co., a wholesale beer distributor; Connecap Land Company, a land development Company; and, Cappelli Land Company, engaged in investment property holdings. Cappelli and his wife are the sole stockholders in the Cappelli Land Company. However, Mrs. Cappelli's participation in the Company consists of the signing of papers without question. As Mr. Cappelli admits, "I handle all the transactions." For all practical purposes, the acts of Mr. Cappelli were the acts of all plaintiffs. Therefore, the conduct of Mr. Cappelli is all this court need be concerned with.

Mr. Cappelli stated that he neither read nor received a copy of the note which he had signed. This is immaterial to this Opinion. The face of the note clearly states, in several places, "payable on demand." The Pennsylvania Supreme Court has held, with reference to a signature card for a small savings account, "failure to read is an unavailable excuse or defense in avoidance, modification, or nullification of the contract or any provision thereof." Estate of Brant, 463 Pa. 230, 235, 344 A.2d 806 (1975). How much more appropriate is this warning when applied to a $150,000 loan!

Therefore, it is clear that, despite plaintiffs' protestations to the contrary, the note executed was a demand note. That is, the debt underlying the note was due and payment may have been demanded immediately. Dominion Trust v. Hilder, 243 Pa. 253, 90 A. 69 (1914); Nyhus v. Travel Management Corp. 446 F.2d 440, 453 (D.C. Cir., 1972).

The next plateau we must reach is, "Was a demand made upon Cappelli?" The uncontradicted facts would indicate that demand was made. While the statement made by Mr. Russell, "If you don't like it (the higher interest rate), you could pay it off", is not especially polite, its implications are clear. Cappelli admitted that he was well aware of the character and operation of a demand note. He knew he must either agree to the higher interest rate or pay off the note. He chose the former course.

In choosing this course, Cappelli placed himself on the path to a modification of the written agreement. Pennsylvania allows a written agreement to be modified by a subsequent written or oral agreement. "This modification may be shown by writing or by words or by conduct or by all three." Bonczek v. Pascoe Equipment, 304 Pa. Super. 11, 450 A.2d 75 (1982) (Emphasis added).

After the increase of the interest rate, Cappelli continued making regular payments at the increased rate for the next two years. Indeed, Cappelli paid off the loan entirely before instituting this action. If actions speak louder than words, the actions of Cappelli shout in exaltation announcing the modification of the prior loan agreement.

A valid modification of a written contract is, in essence, the creation of a new contract. Atlantic Refining Company v. United States, 82 F. Supp. 201 (D.C. Pa. 1949). Therefore, it requires new consid-

eration for the modification. Pellegrene v. Luther, 403 Pa. 212, 169 A.2d 298 (1961). Obviously, the consideration given by Cappelli to PNB is the payment of the higher interest rate. In exchange, PNB has foregone its legal right to demand immediate and total payment on the note. It is hornbook law that forbearance from excusing a legal right is valid consideration. See: Hamer v. Sidway, 124 N.Y. 538, 27 N.E. 256 (1891).

We find that the facts of this case indicate that Cappelli, with complete understanding, agreed by his conduct, to a valid modification of the loan agreement. Consequently, we find no reason to reverse the summary judgment granted by Judge Sweet.

## ORDER

And now, this May 2, 1984, the exceptions of plaintiffs, Raymond M. Cappelli, Gabriella Cappelli, and Cappelli Land Company, Inc. to the order dated December 30, 1983, granting judgment to defendant are dismissed and order affirmed.