599 A.2d 673

**Donald REUTER, Appellant,**

**v.**

**CITIZENS & NORTHERN BANK.**

Superior Court of Pennsylvania.

Argued Sept. 17, 1991.

Filed Nov. 18, 1991.

202

Ray Depaola, Towanda, for appellant. (Submitted).

Raymond E. Ginn, Jr., Wellsboro, for appellee.

Before POPOVICH, HUDOCK and CERCONE, JJ.

CERCONE, Judge:

This is an appeal from a judgment entered in favor of appellee. For the reasons appearing below, we affirm.

Appellant, Donald Reuter, is an attorney licensed in the Commonwealth of Pennsylvania, who personally guaranteed a loan made to Donald Simons by Citizens and Northern Bank. Appellant contends that he thereby obtained a security interest in a 1974 Piper Navajo airplane titled to Mr. Simons, doing business as Towanda Aviation Service. Because of financial difficulties encountered by Towanda Aviation, the Piper Navajo was sold in January of 1985. Although appellant was present at the meeting where Mr. Simons and his creditors decided to sell the airplane, appellant was not given written notice prior to the sale of the collateral. Unfortunately for Mr. Simons' creditors, the proceeds received from the sale of the Piper Navajo were insufficient to eliminate his entire indebtedness.

Appellant subsequently instituted an action against appellee, Citizens and Northern Bank, claiming that appellee violated his rights by failing to notify him in advance of the repossession and sale of the airplane. A non-jury trial was held before the Honorable Robert M. Kemp, specially presiding, in November of 1989. A verdict was entered in favor of appellee on January 26, 1990. Appellant's motion for post-trial relief was dismissed September 7, 1990 and

this appeal ensued one week later. Final judgment was not entered on this case until October of 1990.[1]

■■■ As an initial matter, we must consider our jurisdiction to hear the appeal. A verdict in a non-jury trial is not appealable until the entry of judgment on the verdict. *Black Top Paving Co., Inc. v. John Carlo, Inc.*, 292 Pa.Super. 404, 437 A.2d 446 (1981). However, a case in which the notice of appeal was filed prior to entry of judgment is still validly before the appellate court. *Arcadia Co., Inc. v. Peles*, 395 Pa.Super. 203, 207, 576 A.2d 1114, 1116 (1990). Appellate jurisdiction may be perfected after the notice of appeal has been filed upon docketing of a final judgment. *Id.* In the instant case, our jurisdiction has been perfected via an entry of final judgment. We may therefore proceed to examine the merits of the claims raised.

Appellant has presented five issues for our consideration: (1) whether appellant had a security interest in the collateral sold by appellee; (2) whether appellant was entitled to notice of the sale; (3) whether the sale of the airplane was conducted in a reasonable manner by appellee; (4) whether appellant suffered financial injury as a result of the actions of appellee; and (5) whether appellant's expert witness was improperly precluded by the lower court from testifying as to the values of airplanes listed in the pertinent trade journals. The analysis of the first and second claims, as well as that pertaining to the third and fourth claims, has been intertwined. We shall therefore address these arguments together.

■■■ Appellant first argues that he had a valid security interest in the Piper Navajo airplane. However, the trial

1. The lower court docket sheet contains the following entry:
 October 29, 1990 @ 1:22 p.m. Praecipe to Enter Judgment on Order of Court September 5, 1990 AND NOW, this 29th day of October, 1990, judgment is entered on Court order of September 5, 1990 as per praecipe filed.
 Civil Docket of the Court of Common Pleas of Bradford County at 401 and 499B. Pursuant to Pa.R.A.P. 905(a), we will treat this appeal as being filed after and on the day judgment was entered. *See Beasley v. Beasley*, 334 Pa.Super. 510, 512 n. 3, 483 A.2d 853, 855 n. 3 (1984).

court made an explicit finding of fact that appellant did not perfect a security interest by complying with the Pennsylvania Commercial Code. Lower court opinion of January 26, 1990 at 6. The factual findings of a trial judge sitting without a jury carry the same weight as a jury verdict, and we will not disturb those findings on appeal absent an error of law or abuse of discretion. *Arcadia Co., Inc. v. Peles,* 395 Pa.Super. at 208, 576 A.2d at 1116. We must accept the findings of the court below with respect to the credibility of witnesses. *Id.*

Appellant contends that he is entitled to secured party status because discussions between himself and a bank officer indicated that both parties agreed he would be a secured party. He cites *Bonczek v. Pascoe Equipment Co.,* 304 Pa.Super. 11, 450 A.2d 75 (1982) as support for his position that the existence of a security interest depends upon the intention of the parties to a transaction. We agree with appellant that *Bonczek* contains the following statement: "[W]hether a security interest exists *initially* depends upon the intent of the parties to the transaction." *Id.,* 304 Pa.Superior Ct. at 19, 450 A.2d at 79 (emphasis added). It is nevertheless absurd to argue, based on a single statement removed from its context, that the *Bonczek* court intended to abrogate the entirety of Division 9 of our Commercial Code. *Bonczek* simply means that when determining whether a security agreement exists, the intent of the parties is one of the factors to be considered.

The term "security interest" is defined as an interest in personal property or fixtures which secures payment or performance of an obligation. 13 Pa.C.S.A. § 1201. As appellant correctly states, the rights, obligations and remedies available to the obligor and the obligee are applicable whether title to collateral is in the secured party or in the debtor. *Id.* § 9202. However, an enforceable security interest is created and attaches *only* after three specific events transpire: (1) the collateral is either in the possession of the secured creditor or the debtor has signed a security agreement which contains a description of the

collateral; (2) value has been given; and (3) the debtor has rights in the collateral. *Id.* §§ 9203(a)(1), (2), (3) and (b); *Kendrick v. Headwaters Production Credit Association,* 362 Pa.Super. 1, 4–5, 523 A.2d 395, 397 (1987), *allocatur denied,* 515 Pa. 614, 530 A.2d 867 (1987). A "security agreement," as contemplated by section 9203(a)(1), *supra,* is "[a]n agreement which creates or provides for a security interest." 13 Pa.C.S.A. § 9105.

The findings of fact made by the lower court included an explicit ruling that appellee bank was a secured party with respect to the airplane because it had satisfied the requirements of section 9203, *supra.* Further, appellee had perfected its security interest by filing a financing statement in the Federal Aviation Administration Office in Oklahoma City, Oklahoma. *See id.,* § 9103(c) (Perfection of security interests in multiple state transactions; Accounts, general intangibles and mobile goods (including airplanes)). However, the trial judge found that appellant was neither a party to a valid or enforceable security agreement, nor was he in possession of the collateral. Judge Kemp additionally determined that appellant had actually declined appellee's offer for assignment of its security interest under section 9405 of the Commercial Code. *See id.* § 9405 (Assignment of security interest; duties of filing officer). Our review of the certified record discloses no abuse of discretion or error of law with regard to these factual findings. We therefore conclude that the trial court was correct in ruling that appellant was not a secured party within the meaning of the Commercial Code.

However, appellant has also argued that he attained the status of an accommodation party under 13 Pa.C.S.A. § 3415 by signing as a surety for the loan from appellee to Mr. Simons.[2] Appellant contends that as an accommodation endorser, he is entitled to be treated as a "surety for the maker" and thus may assert, "within the limits of the

---

2. The certified record includes a copy of the "personal guarantee" agreement with Citizens and Northern Bank by which appellant explicitly designated himself a surety rather than a guarantor.

doctrine of subrogation," the "protection of the security given by the maker." Appellant's brief at 8–9. While this argument does not support the precise conclusion urged by appellant, it does contain a correct formulation of our law. By virtue of his status as an "accommodation party," appellant actually attained the status of "debtor" under the Commercial Code, not that of "secured party." Thus, although the trial court properly held that appellant was not a secured party, this correct ruling led to the incorrect conclusion that appellant was not entitled to notice of the pending collateral sale.

An "accommodation party" is one who signs an instrument in any capacity for the purpose of lending his name to another party to the instrument. *Id.* § 3415(a). The Comment to this section clearly indicates that an accommodation party is a surety. *See* Comment 5. to 13 Pa.C.S.A. § 3415. The rights of a "surety" are not the same as those accruing to a "secured party" under the Code, however. A secured party is one who has a valid security interest in collateral and has thereby acquired rights in the collateral itself under section 1201, *supra. Id.* § 9105(a). By contrast, a surety is one who undertakes to pay money or to do any other act in the event that his principal fails therein. *In re Brock*, 312 Pa. 7, 16, 166 A. 778, 781 (1933). The status of surety confers the right to exoneration from the principal debtor. *Craighead v. Swartz*, 219 Pa. 149, 153, 67 A. 1003, 1004 (1907). Thus, where a surety has performed upon the default of the principal debtor, the surety has a right to reimbursement from the principal debtor and is subrogated to the rights of the creditor. *Continental Bank v. Axler*, 353 Pa.Super. 409, 421 n. 2, 510 A.2d 726, 732 n. 2 (1986), *allocatur dismissed*, 518 Pa. 58, 540 A.2d 267 (1988). In sum, a surety's remedy runs not to the collateral, but to the principal debtor. *See generally, Etter v. Industrial Valley Bank and Trust Co.*, 356 Pa.Super. 502, 507, 515 A.2d 6, 8 (1986), *allocatur denied*, 514 Pa. 647, 524 A.2d 494 (1987);

Restatement of Security §§ 82, 103, 104, 107, 108, 110, 112, and 141 (1941).

 Under Pennsylvania law, a guarantor is a "debtor" within the meaning of Division 9 of our Commercial Code. *See, e.g., Ford Motor Credit Co. v. Lototsky,* 549 F.Supp. 996, 1003 (E.D.Pa.1982) (interpreting 13 Pa.C.S.A. § 9105; provides an extensive and erudite analysis of the law on the question of what constitutes a "debtor" in Pennsylvania as well as in other jurisdictions). As such, when collateral is to be sold, a guarantor is entitled to the same notice pursuant to section 9504(c) as is a debtor. However, the rights of a surety under Division 9 of the Commercial Code are less clear as there has been no definitive pronouncement on the subject.[3] Section 9105 defines the term "debtor" as a "person who owes payment or other performance of the obligation secured, whether or not he owns or has rights in the collateral, including the seller of accounts or chattel paper." 13 Pa.C.S.A. § 9105(a). We see no reason to interpret this definition so narrowly as to include guarantors but to exclude sureties. We therefore conclude that as a surety, appellant attained the status of "debtor" within the meaning of the Commercial Code and was therefore entitled to notice of the sale of the principal debtor's collateral in conformity with section 9504(c), *supra.*

 *Inter alia,* section 9504 requires a secured party to provide the debtor with "reasonable notification" of the

3. Although the term "surety" includes "guarantor" under 13 Pa.C.S.A. § 1201 (General definitions), there is no comparable provision stating that "guarantor" includes "surety." For general definitions and the distinctions between contracts of guaranty and suretyship, *see generally,* Restatement of Security § 82 (1941) and Restatement of Security, Pennsylvania Annotations § 82 at 64–66 (1944), comment g (and cases cited thereunder). Under the Restatement, it appears that the primary difference between a surety and a guarantor is the time at which a creditor can collect from each. With regard to suretyship, the creditor can look to the surety for immediate payment upon the occurrence of a default by the principal obligor or debtor. Pennsylvania Annotations, *supra.* However, where an individual is a guarantor, the creditor must first attempt to collect the debt from the principal debtor/obligor before demanding performance from the guarantor. *Id.*

time and place of any public sale of the collateral, or "reasonable notification" of the time after which any private sale or other intended disposition is to be made. *Id.* The purpose of such notification is to give the debtor a reasonable period of time in which to exercise his option to participate in the sale or otherwise to protect his interest. *Beneficial Consumer Discount Co. v. Savoy,* 291 Pa.Super. 649, 652 n. 2, 436 A.2d 687, 689 n. 2 (1981), *aff'd* by 503 Pa. 74, 468 A.2d 465 (1983). The question in the instant case is whether appellant received "reasonable notification" of the airplane's sale so that he could have either participated in the sale or protected his interests in some other manner.

Our Commercial Code describes "notice" and "notification" in the following manner:

"**Notice.**" A person has "notice" of a fact when:

(1) he has actual knowledge of it;

(2) he has received a notice or notification of it; or

(3) from all the facts and circumstances known to him at the time in question he has reason to know that it exists.

A person "knows" or has "knowledge" of a fact when he has actual knowledge of it. "Discover" or "learn" or a word or phrase of similar import refers to knowledge rather than to reason to know. The time and circumstances under which a notice or notification may cease to be effective are not determined by this title.

A person "notifies" or "gives" a notice or notification to another by taking such steps as may be reasonably required to inform the other in ordinary course whether or not such other actually comes to know of it. A person "receives" a notice or notification when:

(1) it comes to his attention; or

(2) it is duly delivered at the place of business through which the contract was made or at any other place held out by him as the place for receipt of such communications.

13 Pa.C.S.A. § 1201. It follows from these definitions that a creditor who deliberately provides actual notice of a

pending sale has given notification of that sale within the meaning of section 1201.

Appellant concedes that he had actual knowledge that a purchaser for the collateral was actively being sought as a result of Mr. Simons' continuing financial difficulties. Appellant's brief at 10. This fact is corroborated by appellant's testimony at trial. N.T. November 6, 1989 at 16–18. Appellant specifically testified that he was present at a meeting involving Mr. Simons and his creditors, including a representative of appellee bank. *Id.* at 17. The agenda for this meeting included a discussion of the financial difficulties of Towanda Aviation and of the extensive efforts being undertaken to find a purchaser for the Piper Navajo airplane. *Id.* We find that by providing appellant with actual notice of the pending collateral sale in the context of a debtor/creditor meeting, the representative of appellee bank gave appellant "reasonable notification" within the meaning of sections 1201 and 9504(c), *supra.*

■ Appellant's third argument is that the sale of the airplane was not conducted in a "commercially reasonable manner" as that term is contemplated by section 9504, *supra.* His fourth claim is that he was financially prejudiced by the manner in which the sale was carried out. To this end, appellant characterizes the foreclosure upon the collateral and its sale as occurring within one day. He also states that this fact alone was enough to alert potential purchasers that the collateral needed to be liquidated at a distressed price, which would impact negatively on their respective offers. Appellant further contends that appellee neither investigated the possibility of having an auction or soliciting sealed bids, nor solicited appellant to purchase the airplane even though he was a licensed pilot with more than $200,000 cash on deposit with appellee. Finally, he strenuously objects to the fact that the airplane was purchased by a wholesaler who did not pay the retail value of the collateral. We have carefully scrutinized the certified record, however, and find no support for these allegations.

Instead, our review of the law regarding the rights of a secured party to dispose of collateral has convinced us that the lower court correctly ruled that the sale of the airplane was conducted in a "commercially reasonable manner" as that term is meant under the Commercial Code. On default, a secured party has the right to take possession of secured collateral and dispose of it in conformity with section 9504, *supra*. 13 Pa.C.S.A. § 9503(a). Section 9504 provides in pertinent part as follows:

**Right of secured party to dispose of collateral after default; effect of disposition**

(a) **Disposition of collateral and application of proceeds.**—A secured party after default may sell, lease or otherwise dispose of any or all of the collateral in its then condition or following any commercially reasonable preparation or processing. Any sale of goods is subject to Division 2 (relating to sales). The proceeds of disposition shall be applied in the order following to: (1) the reasonable expenses of retaking, holding, preparing for sale or lease, selling, leasing and the like and, to the extent provided for in the agreement and not prohibited by law, the reasonable attorneys' fees and legal expenses incurred by the secured party; (2) the satisfaction of indebtedness secured by the security interest under which the disposition is made; and (3) the satisfaction of indebtedness secured by any subordinate security interest in the collateral if written notification of demand therefor is received before distribution of the proceeds is completed. If requested by the secured party, the holder of a subordinate security interest must seasonably furnish reasonable proof of his interest, and unless he does so, the secured party need not comply with his demand.

. . . . .

(c) **Manner of disposition.**—Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any

time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, if he has not signed after default a statement renouncing or modifying his right to notification of sale. In the case of consumer goods,[4] no other notification need be sent. In other cases notification shall be sent to any other secured party from whom the secured party has received (before sending his notification to the debtor or before renunciation by the debtor of his rights) written notice of a claim of an interest in the collateral. The secured party may buy at any public sale and if the collateral is of a type customarily sold in a recognized market or is of a type which is the subject of widely distributed standard price quotations he may buy at private sale.

13 Pa.C.S.A. § 9504(a), (c). The terms of section 9504(c) are further clarified, however, by the following provision of section 9507:

**(b) Disposition in commercially reasonable manner.—** The fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner. If the secured party either sells the collateral in the usual manner in any recognized market therefor or if he sells at the price current in such market at the time of his sale or if he has otherwise sold in conformity with reasonable commercial practices among dealers in the type of property

---

**4.** In the context of this case, the airplane was not "consumer goods" but rather was classified as "equipment" because it was used or bought for use primarily in business. 13 Pa.C.S.A. § 9109(2).

sold he has sold in a commercially reasonable man-
ner.... *A disposition which has been approved in
any judicial proceeding or by any bona fide credi-
tors' committee or representative of creditors shall
conclusively be deemed to be commercially reason-
able,* but this sentence does not indicate that any such
approval must be obtained in any case nor does it
indicate that any disposition not so approved is not
commercially reasonable.

13 Pa.C.S.A. § 9507(b) (emphasis added). The trial court
found that the airplane was not only advertised for sale by
Mr. Simons, but that over an extended period of time,
various agencies and persons were engaged in order to
locate a buyer. Trial court opinion at 12. Several offers
were received, ranging from $11,000 to $76,000. *Id.* Ap-
pellee accepted the highest offer. *Id.* In addition to all
these facts, we direct appellant's attention to section 9507(b)
of the Code. The record before this panel certainly sup-
ports the conclusion that the decision to sell the airplane
was taken in conjunction with a meeting of a bona fide
creditors' committee, at which appellant was actually
present. We therefore conclude that the trial court was
correct in ruling that the sale was conducted in a commer-
cially reasonable manner. Because we have determined
that the sale was "commercially reasonable," it is unneces-
sary to address appellant's claim that he was prejudiced by
the manner of sale.[5]

Finally, appellant argues that his expert witness
was improperly precluded from testifying regarding the
values of airplanes similar to the Piper Navajo in accord-
ance with the information contained in certain trade jour-
nals. The admission of expert testimony is a matter for the
discretion of the trial court and will not be remanded,
overruled or disturbed unless there was a clear abuse of
discretion. *Laubach v. Haigh,* 433 Pa. 487, 491, 252 A.2d

---

**5.** A litigant cannot succeed in a claim for damages stemming from
prejudice under sections 9504(c) and 9507(a) unless he establishes that
the contested sale has not been conducted in a commercially reason-
able manner under section 9507(b). *See* 13 Pa.C.S.A. § 9507.

682, 683 (1969); *Klyman v. SEPTA*, 331 Pa.Super. 172, 177, 480 A.2d 299, 302 (1984). The fundamental consideration in determining the admissibility of evidence is whether it is relevant to a fact sought to be proved. *Martin v. Soblotney*, 502 Pa. 418, 422, 466 A.2d 1022, 1024 (1983). Generally, evidence is relevant when it tends to establish facts in issue or when it advances the inquiry and thus has probative value. *Whistler Sportswear, Inc. v. Rullo*, 289 Pa.Super. 230, 243, 433 A.2d 40, 47 (1981). Relevant evidence is nonetheless excluded if its probative value is substantially outweighed by the danger of unfair prejudice or confusion. *Id.*

 The question before the lower court concerned the fair market value of the collateral. The record shows that appellant's expert was permitted to give his opinion regarding the fair market value of the aircraft at the time of its sale. N.T. 11/6/89 at 38–40. However, the trial court precluded the witness from merely reading advertisements from trade journals because there was no foundation laid as to whether the prices listed constituted an "asking price" or the "fair market value" of the merchandise. *Id.* at 38. Upon determining that the proposed testimony was confusing regarding the establishment of fair market value for the Piper Navajo, the trial court properly declined to admit the evidence. *Id.* We find no abuse of discretion in this ruling, and consequently uphold the action of the lower court.

Judgment affirmed.