J-A32031-17

2018 PA Super 255

JOHN NITARDY AND LAURIE NITARDY

v.

MICHAEL CHABOT

Appellant

: IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
:
:
:
:
:
:
:
: No. 599 MDA 2017

Appeal from the Judgment Entered March 7, 2017
In the Court of Common Pleas of Centre County Civil Division at No(s):
2014-4542

BEFORE:   OTT, J., DUBOW, J., and STRASSBURGER*, J.

OPINION PER CURIAM:                          **FILED SEPTEMBER 14, 2018**

Michael Chabot ("Landlord") appeals from the judgment entered on

March 7, 2017, against him and in favor of John Nitardy and Laurie Nitardy

(collectively, the "Tenants").  We affirm the judgment in part, vacate in part,

and remand for proceedings consistent with this Opinion.[1]

In 2013, the Tenants needed a residence for their family of four and

---

[1] Landlord purports to appeal from the February 22, 2017 order denying his post-trial motion instead of from the judgment entered on March 7, 2017. Ordinarily, an appeal properly lies from the entry of judgment subsequent to the trial court's disposition of any post-trial motions, not from an order denying a post-trial motion. ***Johnston the Florist, Inc. v. TEDCO Constr. Corp.***, 657 A.2d 511, 514 (Pa. Super. 1995) (*en banc*). However, the trial court entered judgment on March 7, 2017, prior to Landlord's filing of his notice of appeal on April 4, 2017.  Therefore, we have jurisdiction to address the appeal on its merits. ***Id.***

---

\* Retired Senior Judge assigned to the Superior Court.

two 80-pound Labrador Retriever dogs. The Tenants sought a relatively short-term lease in anticipation of a then-upcoming job transfer for Mr. Nitardy. Landlord owned a house that he wished to rent to a tenant until he was ready to put the house on the market for sale. Landlord agreed to rent his house to the Tenants. The parties entered into a written residential lease agreement, drafted by Landlord, with a term from September 5, 2013, through March 5, 2014 (the "Lease Agreement"). Prior to the end of the term, the parties agreed to extend the Lease Agreement.

On June 19, 2014, the Tenants vacated the premises. Subsequently, a dispute arose regarding alleged damages to the property and whether the Tenants owed additional rent. After Landlord refused to return the Tenants' security deposit, the Tenants filed a complaint against Landlord pursuant to the Pennsylvania Landlord and Tenant Act of 1951, 68 P.S. §§ 250.101–250.602 (the "Act").

Specifically, the Tenants claimed that Landlord violated Section 250.512 of the Act and breached the Lease Agreement by failing to return their security deposit. Complaint, 12/16/2014, at ¶¶ 19-24, 25-29. The Tenants sought a judgment against Landlord for double their security deposit, plus costs, post-judgment interest, and attorneys' fees.[2]

---

[2] Clause 19 of the Lease Agreement entitles the prevailing party to "recover reasonable attorney fees and court costs" in "any action or legal proceeding to enforce any part" of the Lease Agreement. Lease Agreement at ¶ 19.

Landlord filed an answer with new matter and a counterclaim, alleging that he was entitled to retain the security deposit because the Tenants caused damage to the premises in excess of the deposit, plus the Tenants failed to provide him with a new address in accordance with 68 P.S. § 250.512(e). Answer and Counterclaim, 1/20/2015, at ¶¶ 31-38, 49-63.

Landlord further averred that the Lease Agreement terminated on July 5, 2014, not June 19, 2014, as the Tenants alleged, and the Tenants breached the Lease Agreement by failing to pay him rent for the period between June 19, 2014 and July 5, 2014. *Id.* at ¶¶ 47, 61-62. Landlord sought a judgment for $17,843.72, which represented the amount allegedly needed to repair the property, unpaid rent, a late fee, and damages for loss of use of the property, plus interest, costs of suit, and counsel fees.

After a bench trial, the trial court entered a verdict in the form of an Opinion and Order on December 7, 2016. That verdict awarded the Tenants $6,800 in damages plus $9,392.50 in counsel fees, and it awarded Landlord $400 due to countertop damage that the Tenants admitted was their responsibility. Landlord filed a motion for post-trial relief, which the trial court denied on February 22, 2017. The trial court entered judgment on the February 22, 2017.[3]

---

[3] Landlord filed his post-trial motion on December 19, 2017. Post-trial motions must be filed within 10 days after the filing of the decision following a bench trial. Pa.R.C.P. 227.1(c)(2). The tenth day fell on a Sunday, making the

J-A32031-17

Landlord timely filed a notice of appeal. Both the trial court and Landlord complied with Pa.R.A.P. 1925.

Landlord presents the following issues on appeal.

1. Did the trial court err in denying [Landlord's] claim for rent and a late fee by finding that the unambiguous term language of the[Lease Agreement] had been modified [orally] when [the Tenants] did not present clear and convincing evidence of the alleged oral modification, and [Landlord] provided evidence and testimony supporting his claim that the [Lease Agreement] had not been modified?

2. Did the trial court err by concluding that [Landlord's] list of damages dated July 19, 2014[,] did not satisfy 68 P.S.§ 250.512(a)…[?]

3. Did the trial court err by concluding that the 68 P.S. § 250.512(e) safe harbor did not apply to preclude [the Tenants'] claims for return of the security deposit and for statutory damages when the trial court also found that [the Tenants] did not provide [Landlord] with new contact information until July 15, 2014, which established that the [Tenants'] required notice of new address was not given upon surrender and acceptance or termination, as required by the clear language of 68 P.S. § 250.512(e)?

_____

deadline Monday, December 18, 2017. **See** Pa.R.Civ.P. 203(a) ("Whenever the last day of any such period shall fall on Saturday or Sunday … such day shall be omitted from the computation."). Nonetheless, the Tenants did not object to the untimely filing of Landlord's post-trial motion. **See generally** the Tenants' Opposition to Landlord's Motion for Post-Trial Relief, 1/5/2017. As Landlord filed the post-trial motion while the trial court still had jurisdiction over the matter, the Tenants did not object to the timeliness of the motion, and the trial court decided the motion on the merits, we are permitted to ignore the untimeliness of the post-trial motion. **See Ferguson v. Morton**, 84 A.3d 715, 719 (Pa. Super. 2013) ("[W]hen untimely post-trial motions are filed within the thirty-day period that the trial court retains jurisdiction over the case, and when the trial court decides those issues without objection by an opposing party, we will treat the subsequent appeal as though the post-trial motions were timely filed for purposes of issue preservation.").

4. Did the trial court err by denying most of [Landlord's] claims for damages for necessary property repairs, cleaning, and utility bills given the substantial damages evidence presented by [Landlord]…?[4]

Landlord's Brief at 5-6 (trial court's answers omitted).[5]

## Standard/Scope of Review

Our standard of review in a non-jury trial is well established:

We must determine whether the findings of the trial court are supported by competent evidence and whether the trial judge committed error in the application of law. Additionally, findings of the trial judge in a non-jury case must be given the same weight and effect on appeal as a verdict of a jury and will not be disturbed absent error of law or abuse of discretion.

*Davis ex rel. Davis v. Gov't Employees Ins. Co.*, 775 A.2d 871, 873 (Pa. Super. 2001) (citations omitted).

Additionally, we are mindful that "leases are in the nature of contracts and are thus controlled by principles of contract law, including the well[-]settled rules of interpretation and construction." *Cusamano v. Anthony M. DiLucia, Inc.*, 421 A.2d 1120, 1122 (Pa. Super. 1980).

"Interpretation of a contract, in this case a lease, poses a question of law." *Charles D. Stein Revocable Trust v. General Felt Indus., Inc.*, 749

---

[4] In light of our disposition of Landlord's fourth issue, we need not address Landlord's fifth issue.

[5] We remind Landlord that Pa.R.A.P. 2116(a) requires appellants to state concisely the issues to be resolved in the terms and circumstances of the case, but without unnecessary detail. Pa.R.A.P. 2116(a). We have condensed Landlord's issues accordingly.

A.2d 978, 980 (Pa. Super. 2000). "Our standard of review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary as this court may review the entire record in making its decision." **Kripp v. Kripp**, 849 A.2d 1159, 1164 n. 5 (Pa. 2004).

**Oral Agreement to Modify the Lease**

In his first issue, Landlord argues that the trial court erred by finding that the parties orally agreed to end the Lease Agreement on June 19, 2014. Landlord's Brief at 23-29. Landlord argues that once the original lease term ended on March 5, 2014, the term converted to month-to-month pursuant to clause 4 of the Lease Agreement, making the ending date of the lease July 5, 2014. Therefore, Landlord contends that the Tenants owe him half of a month's rent, or $900, plus a $45 late fee. According to Landlord, although the parties agreed that the Tenants would move out on June 19, 2014, he never agreed that the Lease Agreement would end that same day. *Id.* at 27-29. Landlord argues that the trial court erred by crediting the Tenants' testimony over his and by relying on the Tenants' testimony regarding the modification without written documentation of the same. *Id.* at 24-25.

Clause 4 of the Lease Agreement provides, *inter* alia, that the initial term of the lease ends on March 5, 2014 and then the term converts to a month to month term:

> The term of the rental will begin on September 5, 2013, and will end on March 5, 2014. If [the Tenants] vacate [ the house] before the term ends, [the Tenants] will be liable for the balance of the rent for the remainder of the term. After the end of the term, the

lease converts to a month-to-month term for up to four months, which may be extended if approved.

Lease Agreement at ¶ 4.

Regarding rent, clause 5 states: "[The Tenants] will pay [Landlord] a monthly rent of $1,800, which includes a $25 per pet fee, totaling $50, payable in advance on the first day of each month…." *Id.* at ¶ 5. Clause 6 provides for a late fee up to $45 per month in the event of an untimely rent payment. *Id.* at ¶ 6.

With respect to the lease term, the trial court determined that "credible evidence demonstrated, in a clear and convincing manner, that the [p]arties agreed to a modification of the duration and rent terms of the Lease Agreement, and that [Landlord] agreed to accept payment of $900.00 as the rent for the partial month of June [2014]." Trial Court Opinion and Order, 12/7/2016, at 7 (unnumbered; pagination supplied). Specifically, Mr. Nitardy testified that the Tenants proposed a move-out date of June 19, 2014, which would permit their children to finish the school year. According to Mr. Nitardy, Landlord then:

> agreed to rent the property to the Tenants through June 19, 2014, and to accept $900.00, one-half of a full month's rent, for payment for the partial month of June. Email correspondence [prior to the Tenants' vacating] the property shows communication between the parties tending to corroborate that testimony. Furthermore, [Landlord] accepted [the Tenants'] $900.00 check, which was tendered for the June [2014] rent, and cashed it without any question or protest. It was not until after friction developed between the parties regarding the security deposit that [Landlord] claimed additional rent monies were owed. Finally, the evidence demonstrated that [the Tenants]

surrendered the property to [Landlord] on June 19, 2014, and that [Landlord] accepted the surrender. [The Tenants] testified that [Landlord] told them to leave a door unlocked when they left on June 19[, 2014,] for his re-entry. [Landlord] returned to the property on June 26, 2014, and had his father come to perform work at the property on June 27, 2014.

*Id.* at 7 (unnecessary capitalization omitted). *See also id.* at 3-4.

The law is well settled that parties may modify a written lease agreement by a subsequent oral agreement, and this modification may be shown by words or conduct. *Bonczek v. Pascoe Equip. Co.*, 450 A.2d 75, 77 (Pa.Super. 1982). For an oral modification to be valid, it must be based upon valid consideration and proved by evidence that is "clear, precise, and convincing." *Id.* (citation omitted).

After reviewing the record, the briefs of the parties, and the applicable law, we conclude that the trial court did not err or abuse its discretion in determining that Landlord agreed to end the lease term mid-month. Prior to the dispute arising regarding the security deposit, Landlord's conduct indicated his acquiescence to the Tenants' ending the lease on June 19, 2014. Further, the trial court was entitled to rely upon Mr. Nitardy's testimony as evidence of the oral modification and to discount Landlord's testimony. "As an appellate court, we cannot disturb the finding of the trial court on the witnesses' credibility." *Wallace v. Pastore*, 742 A.2d 1090, 1095 (Pa. Super. 1999). Because the parties orally modified the Lease Agreement to have the rental term end on June 19, 2014, we affirm the judgment insomuch as the trial court properly declined to award back rent and a late fee to Landlord.

**Penalty for Failing to Provide "Written List of Any Damages"**

Landlord next argues that the trial court erred by concluding that his "written list of any damages" did not satisfy Section 250.512(a) of the Act. We agree with the trial court.

The Landlord and Tenant Act specifically provides that a landlord shall "within thirty days of termination of a lease. . . provide a tenant with a **written list of any damages** to the leasehold premises for which the landlord claims the tenant is liable."  68 P.S. § 250.512(a)(emphasis added).  When the landlord delivers the "written list of any damages," the landlord shall return the security deposit less "**the actual amount of damages** to the leasehold premises caused by the tenant."  *Id*. (emphasis added).  If the landlord fails to pay the difference between the security deposit and the "actual damages to the leasehold premises," the landlord shall be liable for double the amount of the security deposit less actual damages to the leasehold premises.  68 P.S. § 250.512(c).

Since the Act requires that the landlord return the security deposit less the "actual damages" to the property, the "written list of any damages" must be specific enough so that the landlord can value the "actual damages" and notify the tenant of the basis for deducting amounts from the security deposit.

In this case, the trial court found the "written list of any damages" that Landlord provided to Tenants was too vague to constitute an appropriate "written list of any damages."  In particular, the trial court found that a "vague

list, without accompanying values as to each item, will not suffice." Trial Court Opinion, filed Dec. 7, 2016, at 9 (unpaginated).

We agree. According to the findings of the trial court and our review of the record, on June 26, 2014, Landlord returned to the property for the first time after the Tenants' departure. Trial Court Opinion and Order, 12/7/2016, at 4. On that same day, Landlord emailed the Tenants and, *inter alia*, updated them regarding the status of his efforts to replace a piece of countertop that Tenants had previously informed him that they had damaged. *Id.* Other than a few minor issues, Landlord did not note any problems with the state of the property. *Id. See also* Landlord's Trial Exhibit D-3.

On July 15, 2014, Landlord sent the Tenants another email. Trial Court Opinion, 12/7/2016, at 5. Landlord again updated them about the status of the countertop repair, and told the Tenants that he was expecting the cost of the repair to be less than $400. *Id.* Landlord also wrote,

> I believe I've identified most of the damage to repair. I am still working on fixing things, so I don't know the total cost. I am keeping the cost down by using less costly Craigslist labor where I can, so there will be plenty of security deposit money to refund to you, which I will do this week now that I know your address.

Landlord's Trial Exhibit D-5 at 1.

Landlord closed the email with 27 bullet points listing items of damage. *Id.* Other than the countertop, Landlord did not assign monetary value to any item. *Id.*

Four days later, on July 19, 2014, Landlord emailed the Tenants again

with an updated list of damages ("Updated List of Damages") that included more items with vague estimates of repairs. Trial Court Opinion and Order, 12/7/2016 at 5. Before listing the items and the cost of repairs, Landlord wrote that he believed that Tenant was bullying Landlord, so Landlord was increasing Tenant's list of damages so that the damages consumed the entire security deposit:

> **In light of your recent threats to me and you indicating an unwillingness to abide by the agreement to remove all traces of pet from the house, I've reconsidered my earlier stance of going easy on you.** I don't respond well to what I see as bullying. The repairs are ending up being more expensive than I was first estimating and I found some additional problems in the past few days. The repairs will consume your entire security deposit. Below are repair estimates.

RR. 341a (emphasis added).

Later in the email, Landlord set forth repair estimates that Landlord argues is a sufficient "written list of any damages" as required by Section 250.523(a). In particular, the Updated List of Damages stated:

- Dog hair cleaning, smell removal, and attempt at foyer repair using fillers $300.00
- Wall damage repair, painting to cover up marks, handrail repair, counter top repair $1,800
- Light bulb $8.45
- Lawn repair $34.81
- AC filter $18.01
- Chair repair $2.10
- **Foyer fix $900.00**
- **Porch fix $900.00**
- Utility bill correction from estimates $91.00
- **Carpet repair: ?**
- **Cabinet stains: ?**
- **Shrub damage: ?**

- 11 -

*Id.* at 2 (bullet points and emphasis added).

Landlord argues that the trial court erred in requiring him to pay double the amount of the security deposit because, according to Landlord, Landlord provided the Tenants with a sufficiently specific "Written List of Any Damages." This list, however, contains several items in which Landlord gave a generalized description of the damage and generalized estimates or no estimate at all. These unspecified items demonstrate that Landlord failed to provide the Tenants with "actual damages" within 30 days of vacating the premises. Therefore, the trial court correctly found that Landlord failed to comply with Section 250.512(a), and properly awarded Appellee double the amount of Appellee's security deposit less any actual expenses as provided in Section 250.512(c).

We remand this issue to trial court to determine whether Landlord has established that, for each item listed on the Updated List of Damages: 1) the item was actually damaged; and 2) the amount that Appellant listed to repair such damage is reasonable. If the trial court finds that Landlord established that an item was damaged and the amount listed is reasonable, the trial court is to subtract that amount from the doubled security deposit and direct Landlord to pay the remaining balance to the Tenants.

We note that since Landlord did not list the cost to repair the carpet, cabinet and shrubs, Landlord has waived any claim to deduct from the security deposit the cost to repair those items.

**Safe Harbor Provision**

In his third issue, Landlord argues that because the Tenants did not provide him with a forwarding address upon termination of the lease and/or their departure from the property, he was entitled to keep the Tenants' security deposit pursuant to subsection 250.512(e). Landlord's Brief at 37-39.

Subsection 250.512(e) states that "[f]ailure of the tenant to provide the landlord with his new address in writing upon termination of the lease or upon surrender and acceptance of the leasehold premises shall relieve the landlord from any liability under [section 250.512,]" which is the section relating to security deposits discussed *supra*. 68 P.S. § 250.512(e). The trial court declined to apply this provision, stating that the parties remained in continual email contact, the Tenants provided Landlord with a forwarding address on July 15, 2014, and Landlord had the mailing information needed to comply with the security deposit provisions of the Act in ample time to do so. Trial Court Opinion and Order, 12/7/2016, at 11. Further, the court stated, "the suggestion that [Landlord] did not return any of [the Tenants'] security deposit because he did not have their forwarding address is belied by the record in this case." *Id.*

We see no basis to disturb the trial court's ruling. The record supports its factual findings. Further, in the lone reported case by this Court construing subsection 250.512(e), we rejected a landlord's attempt to use subsection

250.512(e) as a shield when there was no evidence in the record indicating that the failure to return the security deposit was due to the landlord's not knowing where to mail the deposit. **Adamsky v. Picknick**, 603 A.2d 1069, 1071 (Pa. Super. 1992) ("[W]e find the lack of notice argument is tenuous at best since appellant's reason for withholding the deposit was not because he did not have appellees' new address[;] rather, he withheld it because he maintained there were damages for which he should be compensated."). Therefore, we hold that the trial court properly declined to apply subsection 250.512(e) in this case.

## Landlord's Counterclaim for Damages for Property Repairs and Cleaning

In his fourth issue, Landlord argues the trial court erred by denying his counterclaim for damages for property repairs and cleaning. Landlord's Brief at 39-52. In a bench trial regarding damages claimed by a landlord, "the trial court is free to believe all, part, or none of the evidence presented, to make all credibility determinations, and to resolve any conflicts in the evidence." **Wallace,** 742 A.2d at 1094 (Pa. Super. 1999). The Act places on the landlord the burden of proof as to actual damages caused by a tenant to the leasehold premises. 68 P.S. § 250.512(c).[6]

_____

[6] We note that a landlord's right, pursuant to the Lease, to require a tenant to pay for damage to a property may be separate and distinct from a landlord's right to deduct amounts for damage from the security deposit pursuant to 68 P.S. § 250.512(a). If a landlord fails to meet the requirements of 68 P.S. §

- 14 -

J-A32031-17

Turning to the parties' Lease Agreement, clause 11 addresses the Tenants' maintenance responsibilities. It states that:

> [the Tenants] will: (1) keep the premises clean, sanitary, and in good condition[,] and, upon termination of the tenancy, return the premises to [Landlord] in a condition identical to that which existed when [the Tenants] took occupancy, except for ordinary wear and tear … and (3) reimburse [Landlord], on demand by [Landlord], for the cost of any repairs to the premises damaged by [the Tenants] or [the Tenants'] guests or business invitees through misuse or neglect.
>
> ***
>
> [The Tenants have] examined the premises, including appliances, fixtures, carpets, drapes, and paint, and [have] found them to be a good, safe, and clean condition and repair, except as noted in the Inspection Condition list.[7] The house should be professionally cleaned by the [Tenants] after moveout. [The Tenants are] expected to handle and pay for all minor or routine maintenance tasks or supplies up to $100. Examples include: changing batteries in smoke detectors, changing light bulbs, cleaning up yard waste and leaves, cleaning up trash that gets blown onto the property, replacing the furnace filter (typically every three months, depending on the type of furnace filter), replace fire extinguisher yearly, [and] kill[ing] insects that try to enter the house.

*Id.* at ¶ 11.

Pursuant to clause 8 of the Lease Agreement, the parties agreed that "[t]he cost of necessary cleaning, repairs or replacements shall be deducted from the security deposit at termination of the lease and the remainder will be refunded after the [Tenants have] vacated the premises, returned keys,

---

250.512(a), he still has a claim pursuant to the Lease. He just cannot deduct the amounts from the security deposit and must collect the amounts directly from the tenant.

and provided [Landlord] with a forwarding address." *Id.* at ¶ 8. Finally, clause 14 is entitled "Pets" and states: "[The Tenants] will have the house professionally cleaned after leaving. Evidence of any pet use should be cleaned or fixed." *Id.* at ¶ 14.

The trial court offered the following analysis regarding damage to the Property:

> At the time of trial, [Landlord's] claimed property damages totaled $7,705.73. With limited exception, the [trial court] concludes that [Landlord] failed to meet his burden of proof with respect to any recoverable damages in this matter. In some instances, the [trial court] concludes that the "damages" claimed by [Landlord] qualify as "ordinary wear and tear" for which the lease does not define the term "Inspection Condition list."
>
> [Tenants were] not responsible under the Lease Agreement. Examples include scuff marks on the walls, areas of worn paint, and remnant pet hair in various areas. In other instances, based on the testimony of all trial witnesses, the [trial court] is not convinced that [the Tenants] left the [p]roperty in the state of disrepair and uncleanliness claimed by [Landlord], or that [the Tenants] caused the various items of claimed damage. In addition to the above, the [trial court] notes that many of the labor "invoices" submitted for claimed repairs listed lump sum amounts for individuals who performed work for [Landlord] completely unrelated to the alleged damages at issue as well as work related to [Landlord's] claimed damage in this case. Thus, the [trial court] can only speculate as to costs associated with the items at issue, and speculation is not a proper basis for an award of damages.
>
> As to the limited exception noted above, there is no dispute that [the Tenants] are responsible for the counter top damage, and this item clearly does not qualify as ordinary wear and tear. [The trial court] concludes that evidence at trial was sufficient to establish reasonable repair costs for this item of $400.00.

Trial Court Opinion and Order, 12/7/2016, at 11-12 (citations omitted).

- 16 -

Landlord contends he is entitled to $7,045 for labor and $660.73 for supplies for repairs and cleaning he was required to undertake to address various problems caused by the Tenants. *Id.* at 40-47. Landlord argues that he produced evidence that the property was in good condition when he rented it to the Tenants, but when Landlord entered the property following their departure, "damage was immediately obvious to him." *Id.* at 42. Landlord argues that he met his burden of proof, because both he and his father testified regarding work they performed on the property themselves and work performed by a cleaner and laborer Landlord hired. Additionally, Landlord points to the photographs he took that allegedly reflect damage to the property caused by the Tenants.

In essence, most of Landlord's argument is based upon a contention that the trial court should have credited his testimony and that of his father instead of the testimony of the Tenants and their witnesses. It is clear that the trial court found the Tenants' witnesses to be more credible than Landlord's witnesses. Specifically, the trial court credited the testimony of Judy Lee, a professional housecleaner hired by the Tenants who cleaned the house every other week during the lease term and performed a final cleaning on the day the Tenants left the property. Trial Court Opinion and Order, 12/7/2016, at 4. According to Ms. Lee, the house was "clean and well cared for" when she left, and, "with very limited exception, she did not observe any of the damages" in the house claimed by Landlord. *Id.* The trial court also

noted that the Tenants hired a professional carpet cleaner to clean the carpets throughout the house upon their departure. *Id.* Further, it is apparent that Landlord failed to convince the trial court that the Tenants caused most of the damage and/or that the issues were as extensive as Landlord claimed.

Our review of the record demonstrates that the testimony at trial supports the trial court's conclusion. As discussed *supra*, we must defer to the trial court as to matters of witness credibility. **Wallace**, 742 A.2d at 1095 (holding that the tenants sustained their burden of proof as to the return of their security deposit, and that there was no merit to the landlord's counterclaim because the trial court found the tenants' testimony to be more credible than the landlord's testimony). Thus, to the extent that the trial court declined to award damages based upon credibility determinations, we discern no abuse of discretion or error of law.[7]

However, for some other items, the trial court declined to award damages based upon its conclusion that the damages qualified as ordinary wear and tear for which the Tenants were not responsible pursuant to clause

_____

[7] Landlord also fails to convince us that the trial court erred in its conclusion that some of the evidence produced by Landlord required the trial court to speculate as to the costs associated with the damages claimed by Landlord. Landlord merely argues that he excluded all expenses unrelated to problems caused by the Tenants, **see** Landlord's Brief at 50, but it is clear that the trial court did not believe him. Thus, we decline to disturb the trial court's ruling relating to speculative damages.

11 of the Lease Agreement. In the examples the court listed regarding wear and tear, the trial court included "remnant pet hair." Trial Court Opinion and Order, 12/7/2016, at 12.

Landlord argues that clause 14 relating to pets, not the clause 11 relating to the Tenants' general maintenance responsibilities, applies to any damages for repair or cleaning caused by the Tenants' dogs. Landlord's Brief at 46. Thus, because the parties agreed that "any [e]vidence of … pet use should be cleaned or fixed" by the Tenants, damages related to pet use cannot constitute ordinary wear and tear.

We agree. It is well settled that when interpreting a contract, the specific controls over the general. *Southwestern Energy Prod. Co. v. Forest Res., LLC,* 83 A.3d 177, 187 (Pa. Super. 2013). Although the Tenants are not responsible for ordinary wear and tear pursuant to clause 11, they are responsible for fixing and cleaning evidence of pet use pursuant to clause 14. Therefore, to the extent that the trial court found that Landlord established that the Tenants' dogs caused problems to the property, but it did not award damages to Landlord based upon clause 11, the court erred in so doing. Thus, we remand for the trial court to determine whether any of the damages it

classified as wear and tear were caused by pet use that the Tenants failed to clean or fix.[8]

## Landlord's Counterclaim for Damages for Utility Bills

Landlord contends that the Tenants were responsible for $298.73 for utility bills that arrived after the lease ended, and the trial court erred by not awarding damages for the unpaid utilities and not addressing such a claim in its Opinion. *Id.* at 40, 50-51.[9] Clause 9 of the Lease Agreement requires the Tenants "to pay all utility and optional service charges, which include[] the following: electricity, natural gas, water, sewage, trash pickup, mowing, snow shoveling, TV, [i]nternet, phone. Cost for utilities that remain in [Landlord's] name will be invoiced monthly, separate from the rent payment." *Id.* at ¶ 9.

---

[8] To the extent that the trial court also declined to award damages to Landlord for evidence of pet use because Landlord's damages were too speculative, we do not disturb the trial court's ruling.

[9] In his brief, in addition to bills from gas, electric, sewer, and water companies, Landlord argues clause 9 of the Lease Agreement requires the Tenants to reimburse him for a bill from Total Lawn Care. Landlord's Brief at 51. However, although clause 9 of the Lease Agreement requires the Tenants to pay for bills from certain service providers and utility companies, Landlord did not preserve in his post-trial motion a claim of error based upon the trial court's failure to award him damages for unreimbursed service provider bills pursuant to clause 9. *See* Motion for Post-Trial Relief, 12/19/2016, at ¶ 29. Therefore, Landlord has waived his claim relating to reimbursement of the Total Lawn Care bill pursuant to clause 9. *See Crespo v. Hughes*, 167 A.3d 168, 181 (Pa. Super. 2017) ("Pa.R.Civ.P. 227.1 requires parties to file post-trial motions in order to preserve issues for appeal. If an issue has not been raised in a post-trial motion, it is waived for appeal purposes.") (citation omitted).

Landlord is correct that the trial court did not address specifically Landlord's claim for utilities in its order and opinion. The Tenants argue that Landlord is not entitled to damages because some of the bills include periods occurring past the lease termination date of June 19, 2014. The Tenants' Brief at 31. Based on the record before us, it is impossible for us to determine whether the trial court neglected to consider Landlord's claim for utilities or simply declined to award damages. Further, if it is the latter, it is also impossible for us to determine on what basis the trial court declined to award damages. Therefore, on remand, we direct the trial court to make specific findings as to whether Landlord is entitled to damages for unreimbursed utilities pursuant to clause 9 of the Lease Agreement and the amount of those unreimbursed utilities.

**Conclusion**

Based on the foregoing, we affirm the judgment in part, vacate in part, and remand for proceedings consistent with this Opinion. On remand, the trial court shall (1) determine which of the wear-and-tear problems were caused by pet use that the Tenants failed to clean or fix; and (2) make specific findings as to whether Landlord is entitled to damages for unreimbursed utilities pursuant to clause 9 of the Lease Agreement. The trial court shall determine the amounts of such damage.

Regarding the Updated List of Damages, the trial court shall determine if Landlord established the damage and if the amount listed is reasonable. If

so, the trial court shall deduct only these amounts from the doubled security deposit.

We note that the Updated List of Damages includes damages caused by the dogs and a "correction" for the utility bill. If the trial court finds that these items and the costs meet the requirements of 68 P.S. § 250.512(a), then the trial court shall deduct them, as well as any other items, from the doubled security deposit. If, however, the trial court finds that Landlord is entitled to reimbursement for these items, but not at the amounts listed in the Updated List of Damage, the trial court shall not deduct the amounts from the security deposit but shall instead enter a verdict in favor of Landlord for such amounts.

Finally, the trial court must determine if attorneys' fees and court costs are warranted pursuant to clause 19 of the Lease Agreement; however, since Tenants have always admitted that they are responsible for the damage to the countertop, the trial court should not consider that obligation in determining which party is the "prevailing party" in this litigation.

Affirmed in part and vacated in part. Remand for proceedings consistent with this Opinion. Jurisdiction relinquished.

Judge Ott joins the Opinion.

Judge Strassburger files a Concurring and Dissenting Opinion.

- 22 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 09/14/2018