2022 PA Super 196

| | | |
|---|---|---|
| CATERPILLAR FINANCIAL SERVICES CORPORATION | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellee | : | |
| v. | : | |
| | : | |
| GET ER DONE DRILLING, INC. | : | |
| | : | |
| Appellant | : | No. 202 WDA 2021 |
| | : | |

Appeal from the Judgment Dated January 11, 2021
In the Court of Common Pleas of Greene County Civil Division at No(s):
A.D. No. 206 of 2018

BEFORE:  BENDER, P.J.E., LAZARUS, J., and McCAFFERY, J.

OPINION BY LAZARUS, J.:                    **FILED: NOVEMBER 18, 2022**

Get 'Er Done Drilling, Inc. ("Get 'Er Done") appeals from the judgment, entered in the Court of Common Pleas of Greene County, denying its motion for summary judgment, granting the motion for summary judgment filed by Caterpillar Financial Services Corporation ("Caterpillar"), and entering judgment in favor of Caterpillar.  Upon careful review, we affirm.

The trial court set forth the relevant background of this matter as follows:

> [Get 'Er Done] entered into an installment sale contract on June 19, 2014 with Cleveland Brothers Equipment Co, Inc., for the purchase of [a hydraulic excavator].  Cleveland Brothers then assigned its rights under [the] agreement to [Caterpillar]. Additionally, on June 28, 2015, [Get 'Er Done] entered into a master loan and security agreement with [Caterpillar] for the purchase of [a Ditch Witch directional drill]. . . .  [Get 'Er Done] made only a portion of the payments owed and eventually surrendered [both pieces of equipment] to [Caterpillar,] which exercised its right as a secured creditor to sell the equipment and

> apply the proceeds from the sale to [Get 'Er Done's] debt. [Following the sale of the equipment, Caterpillar claimed deficiencies on the excavator in the amount of $47,647.44 and on the directional drill in the amount of $447,335.35. As a result, Caterpillar] filed suit claiming breach of contract for [Get 'Er Done's] failure to make payments under the first and second security agreements (Counts I and II), and [for] unjust enrichment, for [Get 'Er Done] retaining "the financial benefits that [it] derived only by virtue of [Caterpillar's] financial efforts."

Trial Court Order, 1/11/21, at 1-2 (unnecessary capitalization and citation to record omitted).

Get 'Er Done filed an answer, new matter, and counterclaims for fraud, breach of fiduciary duty, breach of contract and conversion. Caterpillar filed preliminary objections, after which the trial court struck Get 'Er Done's counterclaims for fraud, breach of fiduciary duty, and one count of breach of contract. On February 25, 2019, Get 'Er Done filed an amended counterclaim, asserting claims for breach of contract and conversion, in response to which Caterpillar filed an answer and new matter. Following discovery, which the court extended by six months at Get 'Er Done's request, both parties filed motions for summary judgment with accompanying briefs.

After oral argument, the trial court denied Get 'Er Done's motion for summary judgment, dismissed its remaining counterclaims, and granted Caterpillar's motion for summary judgment. The court entered judgment in favor of Caterpillar as follows: (1) the amount of $38,337.03, plus interest, on the first security agreement; (2) the amount of $491,024.65, plus interest, on the second security agreement; and (3) costs of suit. **See** Trial Court Order, 1/11/21, at 8.

On January 21, 2021, Get 'Er Done filed a motion for reconsideration and, on January 22, 2021, filed a separate motion for reconsideration and motion to strike the affidavit of Duane Hronik.[1]  Caterpillar opposed both motions.  On February 9, 2021, Get 'Er Done filed a timely notice of appeal, followed by a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.  The court did not rule on Get 'Er Done's motions for reconsideration.  Get 'Er Done now raises the following claims for our review:

1. Did the [trial] court err in considering inadmissible and unsupported opinion [] and hearsay evidence at summary judgment from undisclosed witnesses?

2. Did the [trial] court err in relying on evidence which was clearly controverted by evidence of [Get 'Er Done]?

3. Did the [trial] court err in finding the sale of [Get 'Er Done's] AT60 drill was public?

4. Did the [trial] court err in [sic] the sale of [Get 'Er Done's] equipment was done with sufficient [sic] to [Get 'Er Done]?

Brief of Appellant, at 12 (renumbered for ease of disposition; unnecessary capitalization omitted).

In reviewing an order granting summary judgment, our scope of review is plenary, and our standard of review is the same as that applied by the trial court.  Our Supreme Court has stated the applicable standard of review as follows:  [A]n appellate court may reverse the entry of summary judgment only where it finds that the lower court erred in concluding that the matter presented no genuine issue as to any material fact and that it is clear that the moving party was entitled to a judgment as a matter of law.  In making this assessment, we review the record in the light most favorable to the nonmoving party, and all doubts as to the

---

[1] Hronik is a senior paralegal at Iron Planet, Inc., the online marketplace through which Caterpillar auctioned the Ditch Witch Directional Drill.

existence of a genuine issue of material fact must be resolved against the moving party.  As our inquiry involves solely questions of law, our review is *de novo*.

Therefore, our responsibility as an appellate court is to determine whether the record either establishes that the material facts are undisputed or contains insufficient evidence of facts to make out a *prima facie* cause of action, such that there is no issue to be decided by the fact-finder.  If there is evidence that would allow a fact-finder to render a verdict in favor of the non-moving party, then summary judgment should be denied.

*Patel v. Kandola Real Estate, LP*, 271 A.3d 421, 426 (Pa. Super. 2021) (citation omitted).

To survive a motion for summary judgment, the non-moving party may not rely merely upon the controverted allegations of the pleadings, "but must set forth specific facts by way of affidavit, or in some other way as provided by the rule, demonstrating that a genuine issue exists."  *Salerno v. Philadelphia Newspapers, Inc.*, 546 A.2d 1168, 1171 (Pa. Super. 1988)

Get 'Er Done first asserts that the trial court erred in considering inadmissible and unsupported opinion and hearsay evidence from undisclosed witnesses.  Specifically, Get 'Er Done challenges two affidavits submitted by Caterpillar in support of its motion for summary judgment.  The first affidavit was provided by Stephanie Floyd, a Special Accounts Representative II at Caterpillar, and set forth information regarding the parties' security agreements, Get 'Er Done's default thereon, and the amounts owed as a result of the defaults.  The second affidavit was executed by Duane Hronik, a senior paralegal at Iron Planet, Inc., the online marketplace through which Caterpillar

- 4 -

auctioned the Ditch Witch directional drill. Hronik's affidavit set forth the details of the online auction.

Get 'Er Done argues that the affidavits are "wrought with evidentiary issues and should not have been afforded any weight or consideration." Brief of Appellant, at 21. In particular, Get 'Er Done claims that the affidavits do not comply with the "strict requirements concerning affidavits [that] are used in support of a motion for summary judgment." *Id.* at 22. Get 'Er Done asserts that "the affiants did not testify as to the preparation or storage or accuracy of the records" they relied upon in their affidavits, such as would "justify a presumption of trustworthiness." *Id.* at 23. Accordingly, Get 'Er Done argues that the trial court erred in relying upon the affidavits in granting summary judgment in favor of Caterpillar. Finally, Get 'Er Done claims that Caterpillar did not disclose the identity of the affiants during discovery, which would "prevent them from testifying under Pa.R.C.P. 4019(i)." *Id.* at 24.

We begin by noting that, to the extent Get 'Er Done challenges the contents of the affidavits, this argument has been waived for failure to raise it in the trial court. The sole objection Get 'Er Done raised to the affidavits in response to Caterpillar's motion for summary judgment was that the affiants were not disclosed pursuant to Rule 4019(i) and that Floyd's affidavit contained opinions, rendering her an expert witness whose identity was not disclosed pursuant to Pa.R.C.P. 4003.5(b).[2] ***See generally***, Defendant's

_____

[2] Get 'Er Done has abandoned on appeal any argument that Floyd's affidavit amounted to expert testimony.

- 5 -

Answer to Plaintiff's [Amended] Motion For Summary Judgment, 12/7/20; Defendant's Brief in Opposition to Plaintiff's Motion For Summary Judgment, 12/7/20. "The Superior Court, as an error-correcting court, may not purport to reverse a trial court's order where the [] basis for a finding of error is a claim that the responsible party never gave the trial court an opportunity to consider." *Devine v. Hutt*, 863 A.2d 1160, 1169 (Pa. Super. 2004), quoting *Harber Philadelphia Center City Office Ltd. v. LPCI Ltd. Partnership*, 764 A.2d 1100, 1105 (Pa. Super. 2000). As such, arguments not raised initially before the trial court in opposition to summary judgment cannot be raised for the first time on appeal. *Devine*, 863 A.2d at 1169. Accordingly, the sole argument preserved by Get 'Er Done relating to the affidavits is that the witnesses were not disclosed during discovery and are prevented from testifying pursuant to Rule 4019(i).

Get 'Er Done's argument on this claim consists of the following:

Further, the fact that these purported witnesses were never disclosed should be considered against [Caterpillar]. These individuals would not have been permitted to testify[,] as their identities were concealed during discovery. This would prevent them from testifying under [Rule] 4019(i). It is implicit in the context of a summary judgment ruling that the [c]ourt should not consider otherwise inadmissible testimony.

Brief of Appellant, at 24.

Pennsylvania Rule of Civil Procedure 4019 addresses discovery sanctions. Subsection (i) provides as follows:

(i) A witness whose identity has not been revealed as provided in this chapter shall not be permitted to testify on behalf of the

> defaulting party at the trial of the action. However, if the failure to disclose the identity of the witness is the result of extenuating circumstances beyond the control of the defaulting party, the court may grant a continuance or other appropriate relief.

Pa.R.C.P. 4019(i).

As Caterpillar correctly notes, this rule, by its terms, is only applicable to preclude the testimony of a witness **at trial**, not to bar the submission of an affidavit at the summary judgment stage, and Get 'Er Done has cited to no case law holding otherwise. Nor did Get 'Er Done ever file a motion for discovery sanctions pursuant to Rule 4019 in the trial court. In any event, Get 'Er Done had actual notice of the involvement of Iron Planet and of the Floyd affidavit[3] at the time discovery was extended for six months—at Get 'Er Done's request—on January 29, 2020, yet chose not to depose either Floyd or a representative of Iron Planet. Accordingly, Get 'Er Done is entitled to no relief on this claim.

Next, Get 'Er Done claims that the trial court erred in disregarding the "expert report" of Dan Durkin, "which was the only adequately supported valuation of the equipment." Brief of Appellant, at 24. Durkin valued the directional drill at between $440,000 and $550,000, yet the court found the actual sale price of the drill, in the amount of $150,500, to be reasonable.[4]

---

[3] Caterpillar provided notice to Get 'Er Done of Iron Planet's involvement in the sale of the directional drill in 2016, and again in 2017, when it mailed notices of sale to Get 'Er Done. *See* Plaintiff's Amended Motion for Summary Judgment, 8/17/20, at Exhibit I. In addition, a copy of the Floyd affidavit was attached to Caterpillar's original motion for summary judgment, filed on January 15, 2020, after which the court extended the discovery deadline by six months. *See* Trial Court Order, 1/29/20.

[4] Durkin's report does not discuss the value of the hydraulic excavator.

Get 'Er Done asserts that Durkin's report "raises a significant factual issue which the [c]ourt should have preserved for trial." *Id.* at 25.

In response, Caterpillar contends that the Durkin report "is not competent expert testimony under Pennsylvania law." Brief of Appellee, at 20. First, Caterpillar argues that the report is merely "an unsworn, unsupported expression of value submitted by . . . a heavy equipment salesman who has sold equipment to [Perry Rowan, Get 'Er Done's owner] for many years." *Id.* Caterpillar asserts that the report is "inherently unreliable on its face and fails to meet the requirements of the Pennsylvania Rules of Civil Procedure and . . . Evidence." *Id.* Durkin "failed to submit credentials to the [c]ourt or the parties that would justify qualification as an expert" and, thus, Get 'Er Done's characterization of the document as an "expert report" is "legally deficient and factually unavailing." *Id.* at 21.

Moreover, Caterpillar argues, Durkin lacked any basis to opine on the value of the drill at the time it was repossessed and sold at auction. Durkin never personally examined the drill or even reviewed any documentation related to the drill. Rather, Durkin's report indicates that his valuation is based on "the condition [of the drill] as it was related to [him]." Report of Dan Durkin, (undated), at [2]. Caterpillar further notes that Durkin fails to identify the source of his information and that it could not have come from Rowan, who testified at his deposition that he never spoke to Durkin about the report. *See* Rowan Deposition, 7/8/20, at 91. Finally, Caterpillar argues that Durkin is not an impartial witness, as he continues to maintain a longstanding

business relationship selling equipment to Rowan and/or Rowan's employers. We agree with Caterpillar that Durkin's report lacks the proper foundation required of expert testimony and, as such, was properly disregarded by the trial court.

Pennsylvania Rule of Evidence 702 governs the admissibility of expert testimony and provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> > (a) the expert's scientific, technical, or other specialized knowledge is beyond that possessed by the average layperson;
> >
> > (b) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; and
> >
> > (c) the expert's methodology is generally accepted in the relevant field.

Pa.R.E. 702.

> At the summary judgment stage, a trial court is required to take all facts of record, and all reasonable inferences therefrom, in a light most favorable to the non-moving party. This clearly includes all expert testimony and reports submitted by the nonmoving party or provided during discovery; and, **so long as the conclusions contained within those reports are sufficiently supported**, the trial judge cannot *sua sponte* assail them in an order and opinion granting summary judgment. Contrarily, the trial judge must defer to those conclusions, and should those conclusions be disputed, resolution of that dispute must be left to the trier of fact.

***Wright v. Eastman***, 63 A.3d 281, 292 (Pa. Super. 2013) (citations omitted; emphasis added).

Pennsylvania Rule of Evidence 705 requires that "[i]f an expert states an opinion the expert must state the facts or data on which the opinion is based." Pa.R.E. 705. "[E]xpert testimony must be based on more than mere personal belief, and must be supported by reference to facts, testimony or empirical data." **Snizavich v. Rohm & Haas Co.**, 83 A.3d 191, 195 (Pa. Super. 2013) (citations omitted). At the summary judgment stage, a trial court must evaluate expert reports submitted by the non-moving party in a light most favorable to the non-moving party, **so long as the conclusions contained within those reports are sufficiently supported**. **Summers v. Certainteed Corp.**, 997 A.2d 1152, 1161 (Pa. 2010) (emphasis added).

Here, Durkin stated the basis for his opinion as to the value of the directional drill as follows:

> I have reviewed the sales documents for the Ditchwitch [] drill[.] I have further examined the market value, as of 2016[,] for th[is] item[], including sales receipts and my personal experience in the drilling supply industry to formulate the following opinions to a reasonable degree of certainty. I have also examined the Iron Planet auction website for its practices [and] procedures for sale.
>
> . . .
>
> After reviewing the equipment and [its] condition with the Defendants['] representative, Mr. Rowan, **in the condition as it was related to me**, should have warranted a price in the range of $440,000.00 to $550,000.00.
>
> . . .
>
> I have been working for and selling underground construction equipment for Ditch Witch Mid-States for more than 15 years now and my research and valuation for FMV (fair market value) for above said equipment comes from my experience and researching

- 10 -

wholesalers and brokers specific to directional drills and support equipment such as MTI, HDD Broker, Machinery Trader & Source HDD. I believe these valuations are fair asking prices even as of today's market demand.

Durkin Report, at 2.

As a preliminary matter, we note that Durkin provided the court with no credentials to establish his competency as an expert in the valuation of used construction equipment. Durkin's sole stated qualification is that he has been "working for and selling underground construction equipment for Ditch Witch Mid-States for more than 15 years." Durkin Report, (undated), at 2. While it is well-established that a witness may be qualified to render an expert opinion based on training and experience alone, *see Miller v. Brass Rail Tavern, Inc.*, 664 A.2d 525, 528 (Pa. 1995), Durkin provides no additional details regarding his training or experience, nor does he indicate that he possesses any expertise in the appraisal and resale of used equipment.

More important, however, is the fact that Durkin provides no basis for his opinion as to the value of the drill "by reference to facts, testimony, or empirical data." *Snizavich*, *supra*. In fact, the record demonstrates that Durkin opined as to the drill's value without ever inspecting the equipment. While Durkin suggests in his report that Rowan "related" to him the condition of the drill, Rowan denied that he ever discussed this matter with Durkin, *see* Rowan Deposition, 7/8/20, at 91, and, even if he had, Rowan's self-interested description of the drill's condition could not form the factual basis of an admissible expert opinion. Accordingly, because Durkin's conclusions were not sufficiently supported, *Summers*, *supra*, the trial court was within its

discretion to disregard the Durkin report in ruling on Caterpillar's motion for summary judgment.

Finally, Get 'Er Done raises two interrelated challenges to the validity of the sale of the directional drill.[5]  Specifically, Get 'Er Done claims that the trial court erred in finding the sale of the directional drill by auction on the website Iron Planet was a public sale because it was only advertised by email to the subscriber members of Iron Planet.  Brief of Appellant, at 19.  As such, Get 'Er Done argues the sale was a private one.  Get 'Er Done further argues that Caterpillar's notice of public sale was deficient, as the sale occurred seven days prior to the date indicated on the notice.  No relief is due.

Section 9610 of the Commercial Code ("Code") provides for the disposition of collateral following a default, in relevant part, as follows:

> (a) Disposition after default.--After default, a secured party may sell, lease, license or otherwise dispose of any or all of the collateral in its present condition or following any commercially reasonable preparation or processing.
>
> (b) Commercially reasonable disposition.--Every aspect of a disposition of collateral, including the method, manner, time,

---

[5] Get 'Er Done also purports to challenge the validity of the notice of private sale with respect to the excavator, asserting that it was not mailed to the correct address and Rowan "testified he does not recall ever receiving the notice."  Brief of Appellant, at 21.  This claim is patently meritless.  Rowan acknowledged that the address to which notice was sent—240 Kovalcheck[s] Road, Carmichaels, PA 15320—was, in fact, the corporate address of Get 'Er Done.  The erroneous inclusion by Caterpillar of an "s" at the end of the word "Kovalcheck" is insufficient to invalidate the notice.  Moreover, Rowan testified that "I'm not saying [the notices] didn't come.  I'm saying I didn't see them . . . probably because I didn't open up the mail and look at them. . . . Sometimes I don't get to my mail for 30, 40 days." Rowan Deposition, 7/8/20, at 39.

place and other terms, must be commercially reasonable. If commercially reasonable, a secured party may dispose of collateral by public or private proceedings, by one or more contracts, as a unit or in parcels and at any time and place and on any terms.

13 Pa.C.S.A. §§ 9610(a) & (b). The terms "public sale" and "private sale" are not defined in the Code.

Section 9611 of the Code requires that a secured party disposing of collateral shall provide the debtor a reasonable authenticated notification of disposition. *Id.* at § 9611. In a non-consumer goods transaction, such as that at issue here, a notification of disposition sent "after default and ten days or more before the earliest time of disposition set forth in the notification is sent within a reasonable time before the disposition." *Id.* at § 9612(b). Section 9613 of the Code governs the form of notice for the disposition of collateral and provides, in relevant part, as follows:

Except in a consumer-goods transaction, the following rules apply:

(1) The contents of a notification of disposition are sufficient if the notification:

(i) describes the debtor and the secured party;

(ii) describes the collateral which is the subject of the intended disposition;

(iii) states the method of intended disposition;

(iv) states that the debtor is entitled to an accounting of the unpaid indebtedness and states the charge, if any, for an accounting; and

(v) **states the time and place of a public disposition or the time after which any other disposition [i.e., private sale] is to be made**.

(2) Whether the contents of a notification which lacks any of the information specified in paragraph (1) are nevertheless sufficient is a question of fact.

(3) The contents of a notification providing substantially the information specified in paragraph (1) are sufficient even if the notification includes:

    (i) information not specified by that paragraph; or

    (ii) minor errors which are not seriously misleading.

*Id.* at § 9613. The purpose of requiring notification is to give the debtor a reasonable period of time in which to exercise his option to participate in the sale or otherwise to protect his interest. ***Reuter v. Citizens & N. Bank***, 599 A.2d 673, 678 (Pa. Super. 1991).

Here, Caterpillar sent notice of public sale to Get 'Er Done at its corporate address, ***see*** Rowan Deposition, 7/8/20, at 39, on October 2, 2017. The notice stated, in relevant part, as follows:

> [Caterpillar will sell the drill] at public auction by Iron Planet, Inc., an online auction company (via Internet public auction). The unit(s) can be previewed on the Iron Planet Internet Site (www.ironplanet.com) from 10/23/2017 through 11/02/2017. The auction will begin 11/02/2017 sometime after 8:00[ a.m.] at (www.ironplanet.com). All instructions regarding the auction may be found on the Iron Planet web site. The auction will close at 5:00[ p.m.], 11/02/2017. At that time, all sales will be final.

Notice of Public Sale, 10/2/17.

The online auction house utilized by Caterpillar, Iron Planet, "provides an online marketplace connecting motivated sellers and buyers of heavy machinery and other industrial assets from around the world." Duane Hronik Affidavit, 9/14/20, at ¶ 11. It regularly auctions drilling equipment and, "in

the last several years . . . has sold a total of 31 directional drills generating gross transaction value of over $3 million." *Id.* The auction at which Get 'Er Done's drill was offered for sale was marketed from October 5, 2017 through October 26, 2017 via email advertisements sent to Iron Planet's 1.4 million registered account holders, as well as to the 1.5 million subscribers to Iron Planet's promotional news bulletins. *Id.* at ¶¶ 5, 6. The auction web pages were viewed over 4 million times in the weeks leading up to the auction by individuals from around the world, including the United States, Canada, Mexico, Colombia, Peru, and the Philippines. *Id.* at ¶ 7. The webpage for the directional drill was viewed approximately 370 times. *Id.* at ¶ 8. Approximately 160,000 individuals attended the auction, at which approximately 13,000 bids were placed on items available for sale. *Id.* at ¶ 9. The directional drill itself received 100 bids from 19 different bidders around the globe. *Id.* at ¶ 10. The online auction was held between October 12, 2017 and October 26, 2017. *Id.* at ¶ 4.

As to the valuation of the equipment, Caterpillar offered the Floyd affidavit, in which the affiant stated that the values of the excavator and directional drill were determined using an internal Caterpillar Financial system called the Valuations Management Tool (VAT). The VAT "contains matrices specific to each Caterpillar model . . . [and] provide[s] a value specific to the model, model year, estimated hours, configuration or attachments, and application." Floyd Affidavit, 1/13/20, at ¶ 22. The values within the VAT "are based on a detailed analysis of the past five years of public auction data,

Caterpillar Dealer sales data, and Cat Financial Remarketing sales data, and is updated annually." *Id.* Floyd averred that the VAT valued the directional drill at $145,500 and that it ultimately sold at online auction for $150,500. *Id.* at 27, 28.

We can discern no error in the trial court's conclusion that the sale of the directional drill constituted a public sale and that the notice provided to Get 'Er Done was sufficient. The cases relied upon by Get 'Er Done are readily distinguishable from the instant matter. *See Fidelity Consumer Discount Co. v. Clark*, 482 A.2d 580, 583 (Pa. Super. 1984) (holding unpublicized sales of two repossessed automobiles not public, where sole evidence as to nature of sales consisted of testimony that "the sales were 'for anybody that wanted to look at it.'"); *Coy v. Ford Motor Credit Co.*, 618 A.2d 1024 (Pa. Super. 1993) (holding sale of repossessed automobile at unadvertised auction open only to automobile dealers not "public" sale under the Code).

Conversely, here, Caterpillar utilized the power of the internet to advertise the auction to a worldwide audience of at least 1.4 million—and up to 2.9 million—people who were registered users of Iron Planet's website and/or subscribers to its newsletters. *See* Hronik Affidavit, 9/14/20, at ¶¶ 5, 6. As noted above, approximately 160,000 individuals from around the world attended the auction at which the drill was sold. The drill itself received 370 views and 100 bids. Importantly, Get 'Er Done presented no evidence that would have created a genuine issue of material fact as to the commercial reasonableness of the online auction. Although we have found no case law

- 16 -

specifically addressing the question of whether an online auction may constitute a "public sale" as contemplated by the Code, because the auction in this case reached a sufficiently broad worldwide audience and garnered a substantial number of views and bids, we conclude that the trial court did not err in finding it to be a public sale.

As to the sufficiency of the notice of public sale, we conclude that the discrepancy in dates was immaterial. Pursuant to the Code, a notification of disposition sent "ten days or more before the earliest time of disposition set forth in the notification is sent within a reasonable time before the disposition." 13 Pa.C.S.A. § 9612(b). Here, the notice of public sale was dated October 2, 2017. The auction began ten days later, on October 12, 2017, and concluded on October 26, 2017. *See* Hronik Affidavit, 9/14/20, at ¶ 4. As such, Get 'Er Done had sufficient opportunity to visit the Iron Planet website and submit a bid had it chosen to do so.

Moreover, as noted above, the primary purpose of the notice provision is to give the debtor a reasonable period of time in which to exercise his option to participate in the sale or otherwise to protect his interest. *Reuter*, *supra*. Here, Rowan does not argue that he was prevented from making an offer for the drill because he was misinformed regarding the dates of the auction. In fact, Rowan testified at his deposition that: (1) he did not even see the notice of sale because he often does not look at his mail, *see* Rowan Deposition, 7/8/20 at 40; (2) he was unable to make the payments on the equipment because his money "ran out," *id.* at 33; and (3) he had previously attempted

- 17 -

to find a buyer for the equipment, but had been unsuccessful in doing so. **See id.** at 59-63. Accordingly, Rowan was not prejudiced by the erroneous dates contained in the notice of public sale.

Judgment affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/18/2022