J-A01028-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| LYDIA BOGLE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| D N D MARKET AND DELI, INC., | : | No. 1294 EDA 2025 |
| AAKK CORPORATION, DIANE | : | |
| BUSHKIRK, NAYANA PATEL, AND | : | |
| SHAILESHKUMAR PATEL | : | |

Appeal from the Order Entered May 7, 2025
In the Court of Common Pleas of Lehigh County Civil Division at No(s):
2024-C-1256

BEFORE:  DUBOW, J., KUNSELMAN, J., and SULLIVAN, J.

MEMORANDUM BY KUNSELMAN, J.:                    **FILED APRIL 29, 2026**

In this trip and fall case involving a lottery sign, Appellant, Lydia Bogle appeals from the order granting summary judgment in favor of Appellees, DND Market and Deli, Inc., AAKK Corporation, Diane Bushkirk, Nayana Patel, and Shaileshkumar Patel (collectively "DND").  Bogle claims that genuine issues of material fact exist.  Upon review, we reverse the trial court's order and remand for further proceedings.

The trial court set forth the facts as follow:

On January 30, 2024, Lydia Bogle [] drove to the DND Market and Deli, located at 252 Race Street, Catasauqua, Pennsylvania ("Market"). The Market is owned by [DND].  [Bogle] arrived at the Market sometime between 5:50 PM and 6:00 PM. At that time, it was dusk, and the weather conditions were devoid of any snow, ice, or rain.  When [Bogle] arrived at the Market, she parked her vehicle in a parking space situated in front of the building. There

are seven parking spaces facing the front of the Market. Of these seven parking lot spaces, one is designated as being handicap accessible and is the furthest space to the left when facing the Market. [Bogle] parked in the parking space to the right of the handicap space.

Immediately in front of the row of parking spaces is a 4' 1" wide area of asphalt sidewalk which runs the full length of the seven parking spaces. This sidewalk is separated from the parking lot by a yellow-painted concrete curb. Immediately behind the sidewalk is a concrete deck which is raised above the sidewalk and is level with the entrance doors to the Market. From the far left side of this deck, there is a handicap ramp which slopes down from the Market's entrance doors to parking lot level at the left end of the Market's building. This ramp functions as an entrance for pedestrians to use to access the Market.  The ramp is separated from the asphalt sidewalk by an approximately 36" tall metal railing which runs along the length of the concrete deck, with the exception of an opening for a three riser, concrete set of stairs located in between the entrance doors to the Market and the third parking space from the left when facing the Market from the parking area.

When [Bogle] arrived at the Market, a free-standing "Play Here!" PA Lottery sign was situated on the section of the asphalt sidewalk between the handicap parking space and the Market.  The sign is approximately 24 inches wide and 36.5 inches tall and is mounted to a black, 4-legged, metal frame base. The sign, with its metal frame base, stands approximately 45 inches tall. The legs of the sign extend from the sign's frame approximately 19.5 inches from the front and back of the sign, with the legs sloping up from ground level approximately 4.5 inches under the sign.

[Bogle] testified she had previously stopped at [DNDs'] Market a couple of times per week and admitted that she had seen the sign before the night in question.  Bogle claim[ed] that on that evening, the sign was facing a 45-degree angle to the left, as opposed to facing perpendicular to the parking lot.  When [she] arrived at the Market on January 30, 2024, she was able to observe the sign, but did not notice the legs of the freestanding frame which supported the sign.  [Bogle] exited her vehicle and attempted to walk by the sign towards the ramp leading to the entrance to the Market.  As [she] was walking near the sign, the heel of her right winter boot got caught on the legs of the sign, causing her to fall.

Trial Court Opinion, 5/7/25, at 1-3.

Bogle filed a complaint on April 22, 2024, claiming that DND was negligent, and that she sustained injuries as a result of the fall, for which she sought damages. DND filed their answer with new matter, Bogle replied. Following discovery, DND filed a motion for summary judgment.

In its motion, DND claimed that there were no genuine issues of material fact and was entitled to judgment as a matter of the law. DND maintained that the sign, the alleged dangerous condition, was "open and obvious." "A possessor of land is not liable to its invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them . . . ." Restatement (Second) of Torts 343A.

DND further maintained that Bogle had a safe, alternative means of entering the Market but chose not to use it. "Where a person, having a choice of two ways, one of which is perfectly safe, and the other of which is subject to risks and dangers, voluntarily chooses the later and is injured, he is guilty of contributory negligence . . . ." **O'Brien v. Martin**, 638 A.2d 247, 249 (Pa. Super. 1994).

Bogle responded and claimed that genuine issues of material fact existed, and therefore, summary judgment was improper. In particular, she claimed that the legs of the sign were not open and obvious, and created a tripping hazard. She presented evidence in opposition to DND's motion, including her testimony and her experts' reports.

Bogle also maintained that the question of whether a safe way was available so that it is clear that she assumed the risk is a question of fact for the jury. Because she did not see the legs of the sign, she was not put on notice of the danger and the elements of the choice of ways doctrine were not satisfied as a matter of law. Therefore, Bogle argued that her case should be decided by a jury.

Following argument, the trial court granted DND's motion. The court concluded that there were no genuine issues of fact as to whether the sign was open and obvious. The court concluded that because Bogle saw the sign but was not fully paying attention to detect and appreciate the legs, a reasonable person in Bogle's situation would have recognized this hazard. The court observed: "'[I]f there is anything settled in the law of negligence in Pennsylvania, it is the duty of a person to look where he is walking and see that which is obvious.'" ***Villano v. Security Sav. Ass'n***, 407 A.2d 440, 441(Pa. Super. 1979) (quoting ***Lewis v. Duquesne Inclined Plane Co.***, 28 A.2d 925, 927 (Pa. 1942) (emphasis added)).

Additionally, and notably, the court concluded that it could not consider the legs separate from the sign as a matter of law when considering the issue of whether the dangerous condition was open and obvious. In support of this conclusion, the court relied on ***Larose v. Berish***, 334 A.3d 406 (Pa. Super. Jan. 29, 2025) (nonprecedential decision).

Bogle filed this timely appeal. She and the trial court complied with Appellate Rule 1925.

Bogle raises a single issue on appeal: Did the trial court err in granting DND's motion for summary judgment. Bogle's Brief at 5.

Generally, Bogle claims that the court erred in granting summary judgment because genuine issues of material fact existed. When reviewing a grant or denial of summary judgment, this Court's "inquiry involves solely questions of law," and, therefore, our standard of review is *de novo*. **Caterpillar Financial Services Corp. v. Get 'Er Done Drilling, Inc.**, 286 A.3d 302, 306 (Pa. Super. 2022). "The entry of summary judgment is proper whenever no genuine issue of any material fact exists as to a necessary element of the cause of action." **LJL Transportation, Inc. v. Pilot Air Freight Corp.**, 962 A.2d 639, 647 (Pa. 2009). "The moving party's right to summary judgment must be clear and free from doubt." **Id.**

This Court's scope of review is plenary. **See id.** And, like the trial court, we must view the evidence in the "light most favorable to the non-moving party, and we resolve all doubts as to the existence of a genuine issue of material fact against the moving party." **Id.** Because this issue concerns whether the trial court properly granted summary judgment in favor of DND for negligence, we must view the facts in the light most favorable to Bogle.

To establish a viable cause of action for negligence, the plaintiff must demonstrate the following four elements:

> (1) a duty or obligation recognized by the law that requires an actor to conform his actions to a standard of conduct for the protection of others against unreasonable risks; (2) failure on the part of the defendant to conform to that standard of conduct, *i.e.*, a breach of duty; (3) a reasonably close causal connection

between the breach of duty and the injury sustained; and (4) actual loss or damages that result from the breach.

***Shellenberger v. Kreider Farms***, 288 A.3d 898, 906 (citation omitted). "A plaintiff must show that a defendant owed a duty of care, and that this duty was breached.

At common law, [t]he standard of care a possessor of land owes to one who enters upon the land depends upon whether the latter is a trespasser, licensee, or invitee. Here, it is undisputed that Bogle was an invitee.

Pennsylvania law defines invitee as follows:

(1) An invitee is either a public invitee or a business visitor.

(2) A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public.

(3) A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of land.

***Id.*** at 907-08 (citations and quotation marks omitted).

Our Supreme Court has recognized that a possessor of land "is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." ***Carrender v. Fitterer***, 469 A.2d 120, 123 (Pa. 1983) (quoting Restatement (Second) of Torts § 343A).

A danger is deemed to be "obvious" when "both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising normal perception, intelligence, and judgment." Restatement, *supra*, § 343A

- 6 -

comment b. For a danger to be "known," it must "not only be known to exist, but ... also be recognized that it is dangerous and the probability and gravity of the threatened harm must be appreciated." *Id.* Although the question of whether a danger was known or obvious is usually a question of fact for the jury, the question may be decided by the court where reasonable minds could not differ as to the conclusion. *See* Restatement, *supra*, § 328B comments c and d.

*Id.* at 123-24 (concluding the plaintiff "failed to establish the element of duty essential to a *prima facie* case of negligence," where, *inter alia*, the plaintiff's own testimony showed the existence of the dangerous condition on defendant's property was obvious).

Finally, "[a]lthough the question of whether a danger was known or obvious is usually a question of fact for the jury, the question may be decided by the court where reasonable minds could not differ as to the conclusion." *Id.* at 124.

In support of her appeal, Bogle makes several arguments. Bogle first claims that the trial court erroneously concluded there were no genuine issues of material fact as to the openness and obviousness of the lottery sign's legs, the dangerous condition here. Bogle argues that reasonable minds could disagree as to whether the dangerous condition, the PA Lottery sign *legs* (as opposed to the sign itself), was open and obvious to a person in her situation. Bogle maintains that legs of the sign were not obvious. According to Bogle, a reasonable person in Bogle's situation would not have noticed the condition or understood the risk the legs created: it was dark, the legs were dark, the sign was on black asphalt, and the legs blended in with the ground, thereby

concealing them. Bogle further maintains that the legs of sign were not known to her: she did not see the legs, and therefore, she could not appreciate the risk of tripping over them. According to Bogle, her testimony and the opinions of her experts created a genuine issue of material fact as to whether the legs of the sign were open and obvious and should be decided by a jury. Bogle's Brief at 21-23. Bogle, therefore, claims that this Court should reverse the trial court's order.

We agree.

Based upon our review, we conclude that Bogle presented sufficient evidence which created genuine issues of material fact as to the open and obvious nature of the sign's legs. Here, Bogle testified that she had seen the sign at the store before. She further testified that she saw the sign the night she fell. However, she did not see the legs of the sign, which she tripped over. The legs were perpendicular to the sign, rather than being aligned underneath the sign, and protruded out from the sign into the walkway, taking up almost the entire space. Further, because of the lighting and the color of the legs against the asphalt, the legs were concealed.

Additionally, Bogle's experts offered evidence in support of her case. In his report, John A. Nawn, P.E., an expert in engineering, opined in pertinent part that the area in which the sign was placed was a foreseeable walkway in which Bogle had a reasonable expectation of being safe for pedestrian travel. He also opined that the sign created an impediment within this walkway. Mr. Nawn visited the market and observed the sign. He stated, "the black painted

support legs for the incident sign provided little contrast to the asphalt pavement, even under the bright sunlight conditions present during my site examination." R.R. 371a-372a.

Dr. William J. Vigilante, Jr., PhD, CPE, an expert in human factors, also offered his opinion regarding the nature of the sign's legs. He noted that the area where the sign was situated was likely to be used as a walkway. The black legs of the sign protruded into this walkway and were not marked or highlighted in any manner against the black asphalt. He stated:

> The legs of the PA Lottery sign base protruding into the walkway created a reasonably foreseeable tripping hazard to [DND];
>
> [Bogle's] attention to the other salient stimulus along the front of the market and away from the ground as she walked around the PA Lottery sign was reasonably foreseeable to [DND];
>
> The presence of the legs of the PA Lottery sign base extending into the walkway without warning created an unexpected tripping hazard to patrons not alerted to its presence, such as [Bogle];
>
> The protruding leg of the PA Lottery sign base did not possess the minimal conspicuity enhancing features necessary to attract the attention of unsuspecting patrons, such as [Bogle];
>
> Given the lack of any delineation, the lack of conspicuity enhancing features, its location at ground level, the lack of any warnings, and the direction of her attention, the protruding legs of the PA Lottery sign would have fallen in [Bogle's] peripheral vision where it was unlikely to be detected as she attempted to walk past the PA Lottery sign.

(R.333a - R.335a).

Dr. Vigilante further explained how the retail environment created a distraction for Bogle which contributed to the circumstances leading to the incident. He explained:

To safely avoid obstacles and trip hazards in the retail environment, pedestrians have to visually notice and attend to the object in enough time and distance to successfully initiate and complete a maneuver to avoid it. However, the retail environment is designed in such a manner as to direct the customer's visual focus toward the displays and advertisements while attracting their attention to the merchandise in effort to sell more products;

A person's visual field is limited and the ability to notice static objects and trip hazards decreases the farther the object falls into their peripheral vision. As the customers look at displays and advertisements, objects and obstacles along the walkway fall into their far peripheral vision where the likelihood of noticing them decreases significantly;

Similarly, human attention is a limited resource. When a customer's attention is focused on the different displays, products, and advertisements, they have fewer resources to attend to unexpected hazards or other less interesting areas of the environment (e.g., the floor). By purposefully drawing the customer's visual focus and attention to their displays, advertisements, and merchandise, retailers inhibit their customer's ability to safely detect and avoid obstacles and trip hazards along the walkway;

Multiple advertising signs were displayed along the railing of the raised walkway as well as the free-standing PA Lottery sign. The signs were visible and most likely intended to capture the attention of customers approaching and/or entering the market; []

[DND] knew or should have known that customers' visual attention would be directed toward the displays and advertisements as well as the other salient features of the environment, such as the yellow painted raised curb and base of the sloped walkway, leaving [customers] vulnerable to trip hazards located at floor level. [Bogle's] attention to the other salient [stimuli] along the front of the market and away from the ground as she walked around the PA Lottery sign was reasonably foreseeable to [DND][;]

Given the salient [stimuli] available in the parking lot and along the front of the market, [Bogle] was not looking down for the unknown and unexpected presence of the metal legs extending from the base of the PA Lottery sign and into the walkway.

**Id.**

This evidence, viewed in the light most favorable to Bogle as the non-moving party, which we must do, created genuine issues of material fact as to whether the legs of the sign were open and obvious to a reasonable person under the circumstances in this case. As Bogle argues, the trial court seemingly ignored the points made by her experts in support of her case. Instead, it focused on portions of their reports indicating that she was not looking down, that the sign created vertical impediment, and that the legs were small compared to the sign. *See* Trial Court Opinion, 5/7/25, at 7. This was error.

We further conclude that the trial court erred when it relied on *Larose* and determined that this case required it to consider the sign and its legs as one to determine whether it was open and obvious. In *Larose*, the defendant placed a ladder on top of an unstable piece of wood for the plaintiff, a contractor, to use in performing roof work on defendant's property. The ladder gave way and plaintiff was injured. Plaintiff filed a negligence action against defendant, who claimed that he owed no duty to plaintiff as the "dangerous condition" was open and obvious. The trial court agreed, finding that any danger arising from the placement of the ladder on the piece of wood was open and obvious. It therefore granted defendant's preliminary objection on the grounds of legal insufficiency. This Court affirmed.

In the instant case, the trial court found that the nature of the alleged dangerous condition was like the dangerous condition in *Larose*. Thus, the

- 11 -

court concluded that it could not view the legs of the sign in isolation from the sign itself. Therefore, the alleged dangerous condition, being the sign with its legs, was open and obvious.

Notably, however, **Larose** does not stand for the proposition that, as a matter of law, an object resting on another object must be considered one for purposes of determining whether the condition is open and obvious. In fact, **Larose** did not even discuss this idea. Rather, in determining whether the ladder on top of the wood was open and obvious, the trial considered the particular circumstances in that case. First, there was nothing to suggest that the plaintiff could not see how the ladder was set up or was unaware that the ladder was situated on a piece of wood. (Obviously, the plaintiff had to put his foot on the first rung or two of the ladder which sat on top of the wood). The plaintiff was a knowledgeable contractor who would have had more expertise in how to set up the ladder and could have changed the position of the ladder before he started to climb up it. Nonetheless, he climbed up it. Thus, the circumstances in **Larose** are distinguishable from those in the instant case, and **Larose** does not dictate, as a matter of law, that the legs of the lottery sign created and open and obvious danger.

Bogle next argues that the trial court erred in concluding that the choice of ways doctrine barred her recovery. This Court has explained:

> The "choice of ways" doctrine still exists in Pennsylvania despite the substitution of comparative negligence for contributory negligence. **See Updyke v. BP Oil Co.**, 717 A.2d 546, 552 (Pa. Super. 1998). This doctrine states: "[w]here a person, having a choice of two ways, one of which is perfectly safe, and the other

of which is subject to risks and dangers, voluntarily chooses the latter and is injured, he is guilty of contributory negligence and cannot recover." **Downing v. Shaffer**, 371 A.2d 953, 956 (Pa. Super. 1977) (citation omitted).

\*\*\*

In order for there to be sufficient evidence to warrant a jury instruction for the doctrine, there must be "evidence of (1) a safe course, (2) a dangerous course, and (3) facts which would put a reasonable person on notice of the danger or actual knowledge of the danger." [**Downing**, 371 A.2d at 956] (citation omitted). The "choice of ways" doctrine has a narrow application and it should only be applied in "the clearest case." **Oswald** [**v. Stewart**, 448 A.2d 1, 2 (Pa. Super. 1982)]. In cases in which "the doctrine has been applied to find that the plaintiff was contributorily negligent, the danger the plaintiff chose to confront was indisputably obvious." [**O'Brien**, 638 A.2d at 249–50].

**Mirabel v. Morales,** 57 A.3d 144, 153-54 (Pa. Super. 2012) (some citations omitted).

As noted, the choice of ways doctrine relates to contributory negligence on the part of an injured plaintiff. **See O'Brien** at 249. Because there has been no determination that DND was negligent, and remains to be decided by a jury, the issue of contributory negligence is not relevant. Therefore, we need not address this issue. However, to the extent the court determined Bogle was 100% contributorily negligent even if DND could have been negligent, this presumption likewise invaded the province of the jury, who should determine the relative fault of all parties here. Whether Bogle could have taken another path is also a jury question.

Lastly, Bogle claims that the trial court erroneously concluded that the sign and the legs must be viewed together. Bogle argues that this

contradicted the opinions proffered by her experts. She maintains that at the summary judgment stage, the trial court must give deference to a non-moving party's expert opinions and conclusions so long as they are supported by facts of record. Bogle's Brief at 25.

DND argues that Bogle's issue regarding the trial court's failure to consider her expert reports is waived, and alternatively, that the experts' opinions were not supported by the record.

Bogle's reliance on her experts' opinions was part of her argument at the trial court and the general issue in her Rule 1925(b) statement that there were genuine issues of material fact. Therefore, she presented this issue. As discussed above, the expert opinions created genuine issues of material fact. Moreover, it was error for the trial court to consider the lottery sign and its legs solely as one object that prohibited her recovery.

In sum, we conclude that the trial court erred in granting summary judgment in favor of DND, and we reverse its order.

Order reversed. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/29/2026

- 14 -